## LEE *v.* SIMPSON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF SOUTH CAROLINA.

No. 1418. Submitted March 17, 1890, with leave to appellant to file reply-brief in ten days. — Decided April 7, 1890.

A testatrix, residing in South Carolina, who died in July, 1866, left a will made by her in 1863, by a codicil to which, made in January, 1866, she bequeathed to her daughter, then married to C., three-fourths of her interest in a bond and mortgage debt, to be vested in a trustee, who was appointed, and to be enjoyed by the daughter during her life, power being given to the daughter, to dispose of such " bequest" as she pleased, " by a last will and testament duly executed by her." In September, 1875, the daughter died, leaving a will executed in September, 1871, which recited that she was " entitled to legacies " under the will of her mother, and to a distributive share in the estates of a sister and a brother, " and notwithstanding my coverture, have full testamentary power to dispose of the same," and then bequeathed to her husband, C., " the entire property and estate to which I am now in any wise entitled and which I may hereafter acquire, of whatever the same may consist,". " absolutely and in fee simple; " *Held,*

(1) The court is authorized to put itself in the position occupied by the daughter when she made her will, in order to discover from that standpoint, in view of the circumstances then existing, what she intended;

(2) The will of the daughter was intended by her to be, and was, a full execution of the power, because it referred expressly to the subject matter of the power;

(3) The statement in it as to " full testamentary power " referred to the fact that, although she was a married woman, she had power to " dispose of the same" by a will, such power being given to her by the will of her mother, and did not refer to the provision of the constitution of 1868 of South Carolina, and the legislation consequent thereon, enabling married women to dispose of their own property by will;

(4) Outside of her interest in the bond and mortgage, she had practically no property.

IN EQUITY. Decree dismissing the bill. The plaintiff appealed. The case is stated in the opinion.

*Mr. Le Roy F. Youmans, Mr. J. P. Carey,* and *Mr. Alexander C. King,* for appellant, cited: *Sewall* v. *Wilmer,* 132

Mass. 131; *Jackson* v. *Chew,* 12 Wheat. 153; *Henderson* v. *Griffin,* 5 Pet. 151; *Carroll* v. *Safford,* 3 How. 441; *Lane* v. *Vick,* 3 How. 464; *Denn* v. *Rocke,* 5 B. &. C. 720; *S. C.* (House of Lords); 4 Bligh, N. S. 1; *Williman* v. *Holmes,* 4 Rich. Eq. 475; *Scott* v. *Burt,* 9 Rich. Eq. 358; *Aaron* v. *Beck,* 9 Rich. Eq. 411; *Wilson* v. *Gaines,* 9 Rich. Eq. 420; *Pulliam* v. *Byrd,* 2 Strob. Eq. 134; *Bradley* v. *Westcott,* 13 Ves. 445; *Chittenden* v. *Brewster,* 2 Wall. 191; *Bunce* v. *Gallagher,* 5 Blatchford, 481; *Plant* v. *Barclay,* 56 Alabama, 561; *Blomfield* v. *Eyre,* 8 Beavan, 250; *Dormer* v. *Fortescue,* 2 Atk. 282; *Bennet* v. *Whitehead,* 2 P. Wms. 643; *Morgan* v. *Morgan,* 1 Atk. 489; *Roberdeau* v. *Rous,* 1 Atk. 543; *Curtis* v. *Curtis,* 2 Bro. Ch. 620; *Doe* v. *Keen,* 7 T. R. 386; *Mansell* v. *Mansell,* 2 P. Wms. 678; *Bilderback* v. *Boyce,* 14 So. Car. 528; *Standen* v. *Standen,* 2 Ves. Jr. 589; *Ellison* v. *Ellison,* 6 Ves. 656; *Andrews* v. *Emmot,* 2 Bro. Ch. 297; *Bennett* v. *Aburrow,* 8 Ves. 609; *Langham* v. *Nenny,* 3 Ves. Jr. 467; *Mory* v. *Michael,* 18 Maryland, 227; *Lovell* v. *Knight,* 3 Sim. 275; *Weatherhead* v. *Baskerville,* 11 How. 329; *Fay* v. *Fay,* 1 Cush. 93; *Hatfield* v. *Sohier,* 114 Mass. 48; *Doe* v. *Considine,* 6 Wall. 458; *In re Clinton's Trust,* L. R. 13 Eq. 295; *Pratt* v. *McGhee,* 17 So. Car. 428; *Jones* v. *Curry,* 1 Swanston, 66; *Evans* v. *Evans,* 23 Beavan, 1; *Osgood* v. *Bliss,* 141 Mass. 474; *Sewall* v. *Wilmer,* 132 Mass. 131, and cases cited; *White* v. *Hicks,* 33 N. Y. 383; *Funk* v. *Eggleston,* 92 Illinois, 515; *Andrews* v. *Brumfield,* 32 Mississippi, 107; *Webb* v. *Honnor,* 1 Jac. & Walk. 352; *Bingham's Appeal,* 64 Penn. St. 345; *Wetherill* v. *Wetherill,* 18 Penn. St. 265; *Patterson* v. *Wilson,* 64 Maryland, 193; *Pease* v. *Pilot Knob Iron Co.,* 49 Missouri, 124; *Blake* v. *Hawkins,* 98 U. S. 315.

*Mr. Joseph H. Earle, Mr. Augustine T. Smythe* and *Mr. A. M. Lee,* for appellee, cited: *Watts* v. *Lindsay's Heirs,* 7 Wheat. 158; *Fenn* v. *Holme,* 21 How. 481; *Fussell* v. *Gregg,* 113 U. S. 550; *Blake* v. *Hawkins,* 98 U. S. 315; *Postlethwaite's Appeal,* 68 Penn. St. 477; *Clark* v. *Clark,* 19 So. Car. 345; *Scaife* v. *Thomson,* 15 So. Car. 337; *Ladd* v. *Ladd,* 8 How. 10; *Crane* v. *Morris,* 6 Pet. 598; *Kelly* v. *Jackson,* 6

Pet. 622; *Blagge* v. *Miles*, 1 Story, 426; *Warner* v. *Connecticut Mut. Ins. Co.*, 109 U. S. 357; *Carnagy* v. *Woodcock*, 2 Munford, 234; *S. C.* 5 Am. Dec. 470; *Reck's Appeal*, 78 Penn. St. 432; *Still* v. *Spear*, 45 Penn. St. 168; *Finlay* v. *King*, 3 Pet. 346; *Maundrell* v. *Maundrell*, 10 Ves. 246; *Canedy* v. *Jones*, 19 So. Car. 297; *Boyd* v. *Satterwhite*, 10 So. Car. 45; *Bilderback* v. *Boyce*, 14 So. Car. 528; *Moody* v. *Tedder*, 16 So. Car. 557; *Roach* v. *Haynes*, 8 Ves. 584; *Curteis* v. *Kenrick*, 9 Sim. 443; *Munson* v. *Berdan*, 8 Stewart, (35 N. J. Eq.) 376; *White* v. *Hicks*, 33 N. Y. 383.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of the United States for the District of South Carolina, dismissing the bill of complaint of Isabella Lee, an infant, by her next friend, Gideon Lee, against Richard W. Simpson.

The following are the material facts involved in the case:

On May 13, 1854, Mrs. Floride Calhoun was seized and possessed of the tract of land situate in that part of Pickens district which is now Oconee County, in the State of South Carolina, on the east side of the Seneca River, known as the Fort Hill place, containing eleven hundred and ten acres, more or less, and on that day she and her daughter, Cornelia M. Calhoun, sold and conveyed that tract of land, together with certain personal property, to Andrew P. Calhoun, for the sum of $49,000, Cornelia M. Calhoun having no interest in the real estate. Andrew P. Calhoun executed his bond under seal to Mrs. Calhoun and Cornelia, conditioned for the payment of $40,200 to Mrs. Floride Calhoun, and the remaining $8800 to Cornelia, and, to secure the payment of the bond representing the purchase money, and as a part of the same transaction, at the same time executed and delivered to Mrs. Calhoun and Cornelia separate mortgages of the same tract of land and of the personal property, to secure the payment of the sums of money mentioned in the bond.

On the 27th of June, 1863, Mrs. Calhoun made her last will and testament, whereby, among other things, she devised and bequeathed as follows:

" 2. To my daughter Anna Maria, wife of Thomas G. Clemson, of Maryland, I give, devise and bequeath during her life, and for her sole and separate use, the following property: My house and lot in Pendleton and the land attached and belonging thereto, purchased by me from Mrs. William Adger, together with the furniture and everything in the house and upon the premises, reserving, however, the silver and such other articles as I may hereinafter specifically give to others; also all my jewelry and the silver cross and prayer-book presented to me by the church at Newport, Rhode Island. At Anna's death I devise and bequeath all the above-mentioned property to her daughter, Floride Clemson, and at the death of Floride, if she dies without issue, I devise and bequeath it to my sons', John's and William's, children then living, equally among them, or, if they be dead, to their issue then living."

" 19. I am possessed still of a large residue of property, consisting principally of a debt due me by my son Andrew for the purchase of Fort Hill, amounting to about forty thousand two hundred dollars, secured to me by bond and mortgage. I have also an unsecured interest in a gold mine in Dahlonega, Georgia, belonging to the estate of my late husband, and also an interest in the estate of my second son, Patrick, and second daughter, Cornelia, besides other property. Whatever real or personal property I may possess at my death and not hereinbefore specifically or otherwise disposed of, I direct my executors to sell whenever they shall deem it advisable. I direct my executors to collect, as fast as possible, the above-mentioned residue of my estate, and, after paying off my debts and the legacy to Calhoun Clemson, the remainder I wish divided into four parts, which I dispose of as follows:

" 20. One part, being the fourth of the above residue, I give and bequeath to my daughter Anna during her life and for her sole and separate use; and at her death I will and bequeath it to her daughter Floride, and at Floride's death, if she dies without issue, I will and bequeath it to the children of my deceased sons, John and William, then living, equally among them, or to their issue if they be dead; issue to represent the parent. The better to effect my intentions in regard

to the property in this and the second clause given to Anna, I appoint Edward Noble, of Abbeville, trustee for it and vest in him the legal title.   Should Anna at any time wish to sell the house and lands in Pendleton or all or any portion of the property given to her for life, the trustee, provided it meets with his approval, is authorized to dispose of it according to the wishes of my daughter, upon having her written request for so doing.   The proceeds of such sale the trustee shall hold subject to the trusts and limitations declared in reference to the original property.   The trustee is authorized and required to invest the proceeds, and also the fourth part of the residue herein given to her, in such property or in such way as she may in writing direct, provided it meets with his approval. The trustee is authorized and required from time to time to change such investments as often as he may be directed so to do by my said daughter in writing, provided it meets with his approval, holding always the substituted property or reinvestments subject to the trusts and limitations aforesaid.   If from death or any other cause there is no trustee, or if Anna at any time shall desire to change her trustee, she shall have the power so to do and to appoint another by any instrument in writing, under seal, executed by her in the presence of two subscribing witnesses; and as often as she may desire to change her trustee she shall have the power so to do by observing the form and solemnity above described.

"21. One-fourth part of said residue of my said estate I give and bequeath to my granddaughter, Floride Elizabeth Clemson, but if Floride should die without leaving issue I give and bequeath it at her death to the children of my sons John and William, or the issue of them if they be dead, the issue to take by representation.

"22. The remaining two-fourths I dispose of as follows: To Kate P. Calhoun, my daughter-in-law, I give and bequeath the one-half of the one-fourth of said residue of my estate, to be enjoyed by her during widowhood.   At her death or marriage, whichever first happens, I give and bequeath the same to such of her children — being my grandchildren — as may then be alive; but should either of my said grandchildren die

under twenty-one years of age, leaving no child or children, the share of such deceasing grandchild shall go to the survivors or survivor of them or their issue, the issue representing the parent. If Kate should die before me, what I have given her in this will is not to revert to my estate, but is to go to her children — my grandchildren — living at my death, subject to the conditions and limitations above expressed.

" 23. The remaining fourth and half of a fourth of the aforesaid residue of my estate I give and bequeath to my grandsons, John C. Calhoun and Benjamin A. P. Calhoun, sons of my deceased son John, and William Lowndes Calhoun, child of my second son William, equally among them; and should either of them die under twenty-one years of age, leaving no issue, the share of such deceased child shall go to the survivor or survivors."

On the 22d of January, 1866, Mrs. Calhoun duly made a codicil to her last will and testament, wherein, among other things, she revoked the devise of the real property in Pendleton made to Anna Clemson in the second paragraph of her will, and devised the same to other persons, and provided as follows :

" 2. By the nineteenth clause of the will I directed the said bond debt on my deceased son Andrew, secured by mortgage on Fort Hill, together with all other property possessed by me and not before disposed of, to be collected by my executors and the proceeds to be divided into four parts. One part I gave to Anna, one part to her daughter Floride, and the two other parts to Kate and her children, as will appear by clauses 20, 21, 22 and 23 of the will. I desire now to change the disposition of the said bond and mortgage debt, and do now give and bequeath it in the following manner: Three-fourths of my interest in said bond and mortgage debt, amounting to about forty thousand two hundred dollars, I hereby give and bequeath to my daughter, Anna M. Clemson, to be enjoyed by her under clause twenty of the will, and according to the provisions of that clause to vest in the same trustee and to be subject to all the powers, trusts, conditions and limitations of that clause precisely as the bequests therein made were sub-

ject to them, with this exception and alteration, that my daughter Anna is hereby authorized and empowered by a last will and testament duly executed by her, to dispose of this bequest of three-fourths of said bond and mortgage debt as she pleases. If she does not thus dispose of it at her death, I give and bequeath it, the said three-fourths, to her daughter, Floride, and should the said Floride die without leaving issue I give and bequeath it at her death to her brother, Calhoun Clemson; but, nevertheless, Floride shall likewise have power to dispose of it at her death as she pleases, by a last will and testament duly executed by her. By clause second of the will I gave the furniture and every article of the property in my house in Pendleton and upon the premises, with certain reservations, and also my jewelry and some other small articles, to my said daughter Anna. I now confirm to her the bequests of aforesaid furniture and all other personal property embraced in said second clause, which it is my will that she shall enjoy for life as her sole and separate estate, and at her death I give and bequeath all this personal property to her daughter Floride absolutely. To Anna I also give and bequeath the oil portrait of my mother, which by clause fifth of my will I gave to my daughter-in-law Kate.

"3. The remaining one-fourth part of my interest in said bond and mortgage debt against the estate of my deceased son Andrew I give and bequeath to Floride Elizabeth Clemson, my granddaughter, but if she dies without leaving issue I give and bequeath it to her brother, John Calhoun Clemson. She, nevertheless, is hereby authorized and empowered to dispose of said fourth part, as she pleases, by her last will and testament duly executed.

"4. Should my granddaughter Floride's death occur before mine, what I have given her in the will and codicil shall not fall into the residuum of my estate, but I give and bequeath it to her mother, my daughter Anna, who shall take it subject to all the trusts, powers and limitations imposed upon the direct bequest to her; and should my daughter Anna's death occur before mine, what I have given her in the several clauses of the will and codicil shall not fall into the residuum of my

estate, but I give and bequeath the same to her daughter Floride, who shall take and enjoy it as her mother would have done if living, subject to the same trusts, powers, limitations and conditions; and should both Anna and Floride die before me, what has been given them in the several clauses of the will and codicil shall not fall into the said residuum, but I give and bequeath the whole to my grandson, John Calhoun Clemson.

"5. Should I at any time collect the aforesaid bond and mortgage debt, or any part of it, or should Fort Hill be purchased with it, or the money be invested in any other property, or be retained in hand, the property thus purchased, the property thus obtained by investment, and the money thus retained shall be considered and held to be in the place of and the same as the aforesaid bond and mortgage, and shall pass under this codicil as if the same were still in the form of said bond and mortgage — that is to say, shall pass to my daughter Anna and granddaughter Floride, as aforesaid bond and mortgage debt is directed to be divided between them."

On the 12th of March, 1866, Mrs. Floride Calhoun, and Thomas G. Clemson, (to whom letters of administration had been granted in February, 1866, on the personal estate of Cornelia M. Calhoun, who had departed this life intestate and unmarried in that year,) as administrator of the personal estate of Cornelia, exhibited their bill in the court of equity for the district of Pickens, State of South Carolina, against Andrew P. Calhoun and others, for the foreclosure of the mortgage on the tract of land known as the Fort Hill place, executed to secure payment of the bond aforesaid, and for the sale of the land for that purpose, and at the July term, 1866, of the court a decree was made, whereby it was adjudged that the mortgage be foreclosed and the land sold, which decree, on appeal, was affirmed by the Supreme Court of the State of South Carolina, and the cause remanded to the Circuit Court for further proceedings in accordance therewith.

During the pendency of that suit, and on the 25th of July, 1866, Mrs. Floride Calhoun departed this life, leaving in full force her last will and testament, as modified by the codicil

aforesaid ; and thereafter, on the 7th of August, 1866, her last will and testament and the codicil thereto were duly admitted to probate, and Edward Noble, one of the persons mentioned as executors therein, duly qualified as such on the same day.

In August, 1869, Floride E. Clemson intermarried with Gideon Lee, of the State of New York, and the plaintiff, Isabella Lee, is the only child of such marriage, and, on the 27th of August, 1871, the said Floride E. Lee, formerly Clemson, died intestate, leaving surviving her, as her sole heirs-at-law and distributees, her husband, Gideon Lee, and her daughter, Isabella Lee, the plaintiff.

On the 29th of September, 1871, Mrs. Anna C. Clemson made her last will and testament, as follows :

" In the name of God, Amen.

" Whereas I am entitled to legacies under the last will of my deceased mother, Floride Calhoun, and to a distributive share in the several estates of my deceased sister, Cornelia Calhoun, and my brother, Patrick Calhoun, and, notwithstanding my coverture, have full testamentary power to dispose of the same :

" Now I, Anna Calhoun Clemson, the wife of Thomas G. Clemson, of the town of Pendleton, in the county of Anderson and State aforesaid, being of sound and disposing mind, memory, and understanding, do make this my last will and testament in manner following:

" I will, devise, and bequeath the entire property and estate to which I am now in anywise entitled and which I may hereafter acquire, of whatever the same may consist, to my beloved husband, Thomas G. Clemson, absolutely and in fee simple ; but should my husband, Thomas G. Clemson, depart this life leaving me his survivor, or should he survive me and then die intestate, in either event I will, devise and bequeath my entire property and estate, as well as that which I may hereafter acquire, of whatever the same may consist, to my granddaughter, Isabella Lee, the child of Gideon Lee, of the State of New York, absolutely and in fee-simple. I hereby nominate and constitute Thomas G. Clemson executor of this my will."

The proceedings for foreclosure against Andrew P. Calhoun duly went to decree, Noble, executor, having been substituted as one of the complainants, under which the Fort Hill property was sold and purchased by Thomas G. Clemson, as trustee of his wife, on January 1, 1872; and on June 10, 1875, title was made for the same, in pursuance of an order of the court, to Thomas G. Clemson, as trustee of Anna M. Clemson, under the will of Mrs. Floride Calhoun, he having been duly appointed such trustee on the 13th of December, 1871. The consideration for said purchase and conveyance appears to have been the mortgage debt of Andrew P. Calhoun, and Mr. Clemson, it is alleged, also discharged legacies and demands to the amount of $6964.93 in the purchase and redemption of said property.

On the 5th of November, 1873, a partition in kind was made of the Fort Hill property between Anna M. Clemson and Thomas G. Clemson, as her trustee, on the one part, and the plaintiff and Gideon Lee, as her guardian, on the other part, by which one-fourth part thereof, amounting to about 288 acres, was allotted and set off to the plaintiff, and the remainder, amounting to about 814 acres, was allotted and set off to said Anna M. Clemson and Thomas G. Clemson; and the plaintiff thereupon entered into possession of the parcel so allotted to her, and has ever since remained in possession thereof.

On the 12th of September, 1875, Anna M. Clemson, otherwise known as Anna C. Clemson, died, leaving in full force and unrevoked her said last will and testament bearing date September 29, 1871, which was duly admitted to probate; and from September, 1875, to the time of his death Thomas G. Clemson remained in quiet, open and continuous possession of the property, claiming to hold the same as his individual property in fee-simple.

On April 6, 1888, Thomas G. Clemson died, leaving in full force and unrevoked his last will and testament, bearing date the 6th of November, 1886, together with a codicil thereto, bearing date the 26th of March, 1887, which will and codicil were duly admitted to probate on the 20th of April, 1888.

In and by the codicil the defendant Simpson was named and constituted the sole executor of the will, and the Fort Hill property was devised to him on certain trusts, fully set out therein, in virtue whereof the defendant entered into and now remains in possession of the Fort Hill property.

The bill in this case was filed on the 26th of November, 1888. After setting forth the contents of the will and codicil of Mrs. Floride Calhoun, the foreclosure of the mortgage given by Andrew P. Calhoun, the death of Mrs. Floride Calhoun, the probate of her will and codicil, the marriage of her granddaughter, Floride Elizabeth Clemson, to Gideon Lee, the status of the plaintiff as their daughter, the death of Mrs. Lee, leaving her husband Gideon Lee, and the plaintiff as her sole heirs at law and distributees, it alleged that the property so devised by Mrs. Floride Calhoun for the use of Mrs. Clemson passed to the plaintiff under the provisions of the will of Mrs. Calhoun; that, after the death of Mrs. Calhoun, a decree was made in the foreclosure suit for the sale of the property; that under that decree it was sold, in January, 1872, to Thomas G. Clemson, as trustee for his wife, the said Anna M. Clemson, under the last will of Mrs. Calhoun and the codicil thereto, Clemson having been substituted as trustee in the place of Edward Noble; that the sale was confirmed and the title to the property conveyed to Clemson, trustee as aforesaid, in consideration of the premises, which were a recital of the proceedings in the case and the nominal consideration of three dollars, no money having been paid, and no cash paid into court or into the hands of its officers, except the costs; that the deed to Clemson was duly recorded, and the property thus taken in part payment of the debt of Andrew P. Calhoun was held continuously by Clemson as trustee, up to the time of his death, under the trusts created by the will and codicil of Mrs. Calhoun; that thereafter, the plaintiff being then entitled to one-fourth of the property in fee-simple absolute under the will and codicil of Mrs. Calhoun, and Mrs. Clemson being entitled to a life estate in three-fourths thereof for her sole and separate use, with remainder to the plaintiff on the death of Mrs. Clemson, in case the latter did not exercise the power of

appointment by her last will and testament, as provided by the
.will and codicil of Mrs. Calhoun, the plaintiff's father, acting
for her, and Clemson, as trustee under the will and codicil of
Mrs. Calhoun, made an informal partition of the property,
and since that time the plaintiff had been in possession of
about 300 acres of it, and the remainder of it, consisting of
about 814 acres, had been in possession of Clemson up to the
time of his death, and since that time in the possession of the
defendant, claiming under Clemson, as trustee under the will
and codicil of Mrs. Calhoun; that Mrs. Clemson died in Sep-
tember, 1875, without having exercised the power of appoint-
ment conferred upon her by the will and codicil of Mrs.
Calhoun; that thereupon the plaintiff became entitled, in fee-
simple absolute, to the three-fourths of the property then in
the possession of Clemson, as trustee, and to the rents and
profits of that part of the property from that time; that
Clemson remained in possession of that part of the property
·subject to the trusts of the will and codicil of Mrs. Calhoun,
from the time of the death of Mrs. Clemson until he died, in
April, 1888, leaving the plaintiff his sole heir at law, during
the whole of which time he collected the rents and profits of
the property, amounting in all to over $31,000, without in-
cluding interest; that since the death of Clemson the defend-
ant had in some manner, claiming under Clemson, acquired
possession of the 814 acres, and of the rents and profits thereof,
without having been appointed trustee under the will and cod-
icil of Mrs. Calhoun; and that the defendant was about to
make a deed of the 814 acres, and of such accumulated rents
and profits, to uses and purposes which would wholly defeat.
such rights of the plaintiff.

The bill waived an answer on oath, and prayed for an
accounting by the defendant of the rents and profits of the
814 acres; that the trusts on which Clemson held the property
be declared; that the cloud upon the plaintiff's title to it be
removed; that she be adjudged to hold the property in fee-
simple absolute; that the defendant account for the personal
property in which Mrs. Clemson had a life estate, and in
which the plaintiff has an estate in remainder or otherwise,

which came into his possession ; and that he be enjoined from conveying any part of the property, or any of the property of which Clemson died possessed, to any use or trust which would tend in any manner to cloud the title of the plaintiff or defeat her rights in the premises; and for general relief.

The answer set up that Mrs. Clemson, by her last will and testament, duly executed and duly admitted to probate, disposed of the property held under the trusts of the will and codicil of Mrs. Calhoun, in favor of her husband, Thomas G. Clemson; that from and immediately after her death the property vested in him in fee-simple; and that his continuous and undisturbed possession thereof from that time was in his own right, and not as trustee.

After a replication, proofs were taken, and the case was heard by the Circuit Court, with the result before stated.

The opinion of that court is reported in 39 Fed. Rep. 235. It passed upon what is the only material question in the case, namely, as to whether Mrs. Clemson, by her will, exercised the power given to her by the will and codicil of Mrs. Calhoun, to dispose of the bequest of three-fourths of the interest of Mrs. Calhoun in the bond and mortgage debt of Andrew P. Calhoun, amounting to about $40,200. The conclusion of the court was, that the will of Mrs. Clemson referred to the property which was the subject of the power and also to the power itself; that it was her intention to dispose of the property in question by her will; and that such intention was carried out in due execution of the power.

The recital in the will of Mrs. Clemson is as follows: "Whereas I am entitled to legacies under the last will of my deceased mother, Floride Calhoun, and to a distributive share in the several estates of my deceased sister, Cornelia Calhoun, and my brother, Patrick Calhoun, and, notwithstanding my coverture, have full testamentary power to dispose of the same." It then proceeds as follows: "I will, devise and bequeath the entire property and estate to which I am now in any wise entitled and which I may hereafter acquire, of whatever the same may consist, to my beloved husband, Thomas G. Clemson, absolutely and in fee-simple; but should my husband,

Thomas G. Clemson, depart this life, leaving me his survivor, or should he survive me and then die intestate, in either event I will, devise, and bequeath my entire property and estate, as well as that which I may hereafter acquire, of whatever the same may consist, to my granddaughter, Isabella Lee, the child of Gideon Lee, of the State of New York, absolutely and in fee-simple."

As Mrs. Clemson died before her husband, and as he did not die intestate, this last devise and bequest to the plaintiff did not become operative, and the clause containing it is of no effect, except as its language may bear upon the proper construction of the entire instrument.

The view taken by the Circuit Court was that, as Mrs. Clemson had the right, for her life, to the enjoyment of the property held in trust for her under the will and codicil of Mrs. Calhoun, and the absolute power of disposing of it by will, she treated it by her will as being as much hers as the distributive share, referred to in her will, in the several estates of her sister and brother; that it would be too narrow and technical a construction of the will, under the circumstances, so to limit the language of the devise and bequest as to exclude the exercise of the power; that the mention of the distributive share in the estates of her sister and her brother allowed it to be said that the language of the devise and bequest might have some effect by means of her interest in such distributive share, but that would not be all the effect which the words imported; that, if the intention to pass the property held in trust could be discovered, such intention ought to prevail; that the intent to dispose of such property was apparent on the face of the will; that, as it plainly referred to the property covered by the power, its language could not be satisfied unless the instrument should operate as an execution of the power; that the recital in the will that, notwithstanding her coverture, she had "full testamentary power to dispose of the same," (referring to the legacies under the will of her mother and to a distributive share in the estate of her sister and brother,) could not be regarded as merely a reference to the fact that, shortly before that time, married women in South

Carolina had, by the constitution of 1868, and the legislation
consequent thereon, been enabled to dispose of their property
by will, because, in that view, such statement would have been
wholly uncalled for, as she could alienate her own property in
any way she chose, while the property held in trust for her
for her life could be disposed of by her only by will; and that,
therefore, the more reasonable inference was that she referred,
by the words " full testamentary power," to the will of ·her
mother, rather than to her own recently acquired legal capac-
ity, though a married woman, to make a will, as to the prop-
erty in which she did not have merely a life estate, with a
power of appointment.

By the will and codicil of Mrs. Calhoun, the following be-
quests or legacies were left to Mrs. Clemson : (1) A bequest
for life of three-fourths of the bond and mortgage debt due
by Andrew P. Calhoun; (2) A devise and bequest for life of
certain real estate, furniture and other personal property men-
tioned in the second clause of the will and in the second clause
of the codicil; (3) A share for life in a part of the ·residuary
· estate left after the payment of debts; (4) A share for life in
the remainder of such residuary estate, if her grandsons should
die under age and without issue ; (5) Her grandmother's por-
trait. All of these legacies, except such portrait, were made
to Mrs. Clemson for her life. In regard to the portrait, as
Mrs. Calhoun died in July, 1866, and Mr. and Mrs. Clemson
were then both of them living the rights of Mr. Clemson under
the common law rule immediately attached to the portrait,
and it became at once his personal property. The legacies to
Mrs. Clemson or for her benefit were all personal property at
the time of her death. The fifth clause of the codicil to the
will of Mrs. Calhoun directs that if Fort Hill, the property in
question, should be purchased with the bond and mortgage
debt, the property so purchased should " be considered and
held to be in the place of and the same as the aforesaid bond
and mortgage," and should " pass under this codicil as if the
same were still in the form of said bond and mortgage," that
is to say, should pass to Mrs. Clemson and her daughter Flor-
ide, as the " aforesaid bond and mortgage debt is directed to

be divided between them." In her will and codicil, Mrs. Calhoun speaks of the provisions made for Mrs. Clemson as "bequests," and also as the "property' given to her.

At the time Mrs. Clemson's will was made, the court had ordered, in July, 1871, the sale of the Fort Hill property to satisfy the mortgage debt, which then amounted to over $65,000. It was manifest that the property would have to be purchased by the mortgagees; but as, in fact, it had not been purchased when the will was made, the mortgage debt was still, under the will of Mrs. Calhoun, a legacy of personal property, and would be spoken of properly, in the will of Mrs. Clemson, as a legacy to which she was entitled under the will of her mother. Moreover, by the terms of that will, the investment in the Fort Hill property was still to be considered as personal property.

Mrs. Clemson's distributive share in her sister's estate was, at the time Mrs. Clemson made her will, of small value, as she ultimately received from it, at most, only $601.94. Her share in her brother's estate was at that time also small, amounting only to $120.49, although, in fact, she received $150. This was all the property which she had, or supposed she had, when she made her will, and all that she intended to dispose of.

The rents which had accumulated on the Fort Hill property before it was sold under the decree of foreclosure did not belong to Mrs. Clemson; but belonged to the estate of Andrew P. Calhoun, the mortgage debtor; and when they were received by Mr. Clemson in part payment of the debt they were to be held by him as trustee of Mrs. Clemson under the will and codicil of Mrs. Calhoun.

Putting ourselves in the position occupied by Mrs. Clemson when she made her will, as we are authorized to do, in view of the circumstances then existing, in order to discover from that standpoint what she intended, *Blake* v. *Hawkins*, 98 U. S. 315, 324; *Postlethwaite's Appeal*, 68 Penn. St. 477, 480; *McCall* v. *McCall*, 4 Richardson Eq. 448, 455; *Scaife* v. *Thompson*, 15 So. Car. 337, 357; *Clark* v. *Clark*, 19 So. Car. 345, 348, 349, we are of opinion that the will of Mrs. Clemson was intended by her to be, and was, a full execution of the

power. She was entitled to bequests and legacies under the will and codicil of Mrs. Calhoun, which they spoke of as "property," and which Mrs. Clemson was authorized to dispose of as she pleased. It was lawful for her to execute such power in favor of her husband. The interest to which the power applied was at the time personal property, and was a legacy or bequest. Her will refers to the fact that she is entitled to legacies under the will of her mother, and to a distributive share in the estates of her sister and brother. This is the property which she believed she had; this is what she really had; and this is what she intended to dispose of by her will. The will, therefore, in referring to the legacies to which she is entitled under the will of her mother, refers expressly to the subject matter of the power. The second article of the codicil to the mother's will, after bequeathing to Mrs. Clemson, for life, the three-fourths interest in the bond and mortgage debt, gives her the power " to dispose of this bequest," thus applying that word to the remainder which the daughter took no interest in, but merely a power to dispose of; and Mrs. Clemson, in using the word "legacies," must have intended to include the interest in remainder, which her mother had called a "bequest."

As to the legacy of the three-fourths interest for life in the bond and mortgage debt, she had only a power of appointment. Her property in it had only that extent; but it had that extent; and to that extent she regarded it as her property, which consisted of the right to the use of it for her life and of the power of disposing of it by her will. The statement that, notwithstanding her coverture, she had " full testamentary power to dispose of the same," refers to the fact that, although she was a married woman, she had power to dispose of the same by a will, such power being given to her by the will of her mother. The expression has the same meaning as if it had read " full power to dispose of the same by will.".

This power so to dispose of the subject of the power created by the will of her mother she possessed fully, without the aid of the provision of the constitution and legislation of South Carolina enabling married women to dispose of their own

property by will, because without a statute of that kind married women could always execute powers of appointment. The provision of the constitution and statute might have been necessary to authorize her to dispose by will of her distributive shares of the estates of her sister and her brother; but with her power to dispose of such shares by her will we are not here concerned. By the constitution, adopted in 1868, and the legislation in pursuance thereof, Mrs. Clemson had as full legal capacity to make a will as if she were a *feme sole,* and she needed no other power to enable her to do so. Her mother died in 1866, and the power conferred by that will and codicil upon Mrs. Clemson was conferred upon her as a married woman, and was afterwards exercised by her as a married woman.

We then come to the following language in the will: "I will, devise and bequeath the entire property and estate to which I am now in anywise entitled and which I may hereafter acquire, of whatever the same may consist, to my beloved husband, Thomas G. Clemson, absolutely and in fee-simple." Outside of her interest in the bond and mortgage on the property in question, to which she was entitled as a legacy under the will of her mother, she had practically no property, her interest in her brother's and sister's estates being of such small value. Unless, therefore, by referring to legacies under the will of her mother, she refers to the interest in the bond and mortgage, all that she could refer to as having come to her under the will of her mother would be, at most, the oil portrait of her grandmother. It cannot be reasonably supposed that that is the proper construction of the will. As for the interest or income she had derived during her life from the bond and mortgage property, the moment it was received it became her property; and it could not properly be regarded as covered by the expression of legacies to which she was entitled under the will of her mother.

The question of the execution of a power is very fully discussed by Mr. Justice Story in *Blagge* v. *Miles,* 1 Story, 426. The rule laid down in that case is, that if the donee of the power intends to execute it, and the mode be in other respects

unexceptionable, that intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative; that the intention to execute the power must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation, but if it be doubtful, under all the circumstances, then that doubt will prevent it from being deemed an execution of the power; and that it is not necessary, however, that the intention to execute the power should appear by express terms or recitals in the instrument, but it is sufficient that it appears by words, acts or deeds demonstrating the intention. Judge Story states, as the result of the English authorities, that three classes of cases have been held to be sufficient demonstrations of an intended execution of a power: (1) Where there has been some reference in the will, or other instrument, to the power; (2) Or a reference to the property, which is the subject on which it is to be executed; (3) Or where the provision in the will or other instrument, executed by the donee of the power, would otherwise be ineffectual, or a mere nullity; in other words, it would have no operation, except as an execution of the power. The rule thus stated was referred to with approval by this court in *Blake* v. *Hawkins*, 98 U. S. 315, 326; and in *Warner* v. *Connecticut Mutual Life Ins. Co.*, 109 U. S. 357, 366; by the Court of Appeals of New York, in *White* v. *Hicks*, 33 N. Y. 383, 392; and by the Supreme Court of Illinois, in *Funk* v. *Eggleston*, 92 Illinois, 515, 538, 539, 547. See, also, *Meeker* v. *Breintnall*, 38 N. J. Eq. 345.

Nor is the rule different under the decisions of the courts of South Carolina. *Hopkins' Executors* v. *Mazyck*, Rich. Eq. Cas. 263; *Porcher* v. *Daniel*, 12 Rich. Eq. 349; *Boyd* v. *Satterwhite*, 10 So. Car. 45; *Bilderback* v. *Boyce*, 14 So. Car. 528; *Moody* v. *Tedder*, 16 So. Car. 557.

The counsel for the appellant relies with great confidence on the case of *Bilderback* v. *Boyce, supra*, where real estate was devised by a father to trustees, to permit his son to take the income for life, with remainder to such persons as the son by his will might appoint, and, in default of appointment, to the children of the son. The son by his will gave, devised and

bequeathed "all the rest and residue of my estate, whatever and wherever," to persons named, but did not mention the power or the trust property. He had real estate in his own right. The court held that there was no execution of the power, on the ground that the will disposed in general terms of the whole estate of the donee of the power, without any reference in terms to the power or the property, and that the donee's own property satisfied the terms of the will. The land to which the power related was not mentioned in the will, nor was the power referred to, and the terms of the will were satisfied by the property which the son left, without including that as to which the power existed. But the court cites with approval the case of *Blagge* v. *Miles, supra,* and quotes the passage from it before referred to, and takes as its guide, as the result of all the American authorities, the principle, that "the intention to execute must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation."

In the subsequent case of *Moody* v. *Tedder, supra,* one Griggs, by his will, devised and bequeathed to his wife, for life, all his property, both real and personal, empowering her to use and dispose of so much of it as might be necessary for her comfortable support and maintenance, in such style and manner as she might see fit; and gave whatever portion might be remaining of the property after the death of his wife to the wife of one Tedder. The widow of Griggs, for a consideration, conveyed to Tedder all her "interest and life estate" in the "property left to me for life" by the will of Griggs. It was held, that the widow of Griggs, as life tenant, had an absolute power of disposing of the property, and that the conveyance to Tedder carried not only the life estate but also the power of disposal, and must be referred to the power which the widow possessed, whether it purported to be an execution of the power or not. The view of the court was that, as the words of the conveyance were "all my interest and life estate," and as Mrs. Griggs had, besides the life estate, no other interest in the property, and as express reference was made to the property as to which the power existed, by

describing it as "property left to me for life" by the will of Griggs, her deed must be considered as conveying all her rights in the estate, including her power of disposal, although the conveyance made no reference in terms to such power. The court said, that while it was true that the word "interest" was not the technical term to express the idea of a power, it was broad enough, in its ordinary acceptation, to cover it, and that the conveyance was intended to include such power. The opinion added that the question of the execution of a power was one of intention, and it then cited the case of *Bilderback* v. *Boyce, supra*, as establishing the principle, that "if the devisee of the power intends to execute it, that intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative," although "the intention to execute the power must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation."

In the present case, the will of Mrs. Clemson recites that she is entitled to legacies under the will of her mother. It refers to bequests left to her for life, with the power of disposition. It thus refers to the power and also to the property which is the subject of the power, namely, the legacies left to her in her mother's will. Furthermore, the statement in the will of Mrs. Clemson that she has full testamentary power to dispose of those legacies is, in view of the fact that the will of her mother does give her the power to dispose of those legacies as she pleases, an express and direct reference to such power, because under the constitution and statute of South Carolina, in force at the time Mrs. Clemson made her will, she could have disposed by will of any other property which she had, without the aid of any special power to do so. Her will then states that she wills, devises and bequeaths to her husband, absolutely and in fee-simple, "the entire property and estate to which I am now in anywise entitled, and which I may hereafter acquire, of whatever the same may consist." She does not here say "my property and estate," but the language she uses is adequate to include not only what was her own in fee-simple and in full right, but also all that in which she was in-

terested, or over which she had any control. The words "in anywise entitled" are sufficient to cover not only property which she held in her own full right, but also property which she held in a limited right under her mother's will. The word "property" was the very word used by her mother in describing, in her will and codicil, the estate and interest which she had given to Mrs. Clemson. Thus, in clause 20 of the will of Mrs. Calhoun, which gives to Mrs. Clemson for life a share in the residue of the estate, she speaks of "the property" given to Mrs. Clemson in that clause and in the second clause of the will, the latter clause containing only a devise and bequest to Mrs. Clemson for life of certain real estate and personal property. Therefore, Mrs. Clemson, in using the words "the entire property and estate to which I am now in anywise entitled," must be regarded as referring to that in respect to which she had the power of disposition by the will of her mother. Otherwise, we have the case of a reference to legacies left to Mrs. Clemson under her mother's will, and to her power of disposing of them, which is meaningless unless the language of the devise and bequest which follows covers the property in regard to which she had such power of disposition. At the time of her death, in September, 1875, she had received all that she was entitled to receive from the estates of her sister and her brother, and there was nothing then left except the property which had come to her under her mother's will, namely, the interest in the bond and mortgage and the portrait of her grandmother.

The decree of the Circuit Court was right, and it is

*Affirmed.*