## JOHNSTONE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7560.

Circuit Court of Appeals, Ninth Circuit.

March 4, 1935.

Thomas R. Dempsey and A. Calder Mackay, both of Los Angeles, Cal. (Lloyd W. Brooke, of Pasadena, Cal., of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Andrew D. Sharpe, and Joseph M. Jones, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR and GARRECHT, Circuit Judges, and CAVANAH, District Judge.

WILBUR, Circuit Judge.

Petitioner seeks a review of the order of the Board of Tax Appeals sustaining the determination of the Commissioner of Internal Revenue of a deficiency of $12,881.81 in the federal estate tax on the estate of Allerton Johnstone, deceased, of which petitioner is executrix.

The facts are not disputed and can be summarized as follows:

The petitioner is the executrix of Allerton Johnstone, deceased, letters testamentary having been duly issued to her on August 19, 1929, by the superior court of the state of California in and for the county of Los Angeles.

Allerton Johnstone, the decedent, was a resident of Pasadena, Cal. On June 8, 1929, he was killed as the result of an accident. At the time of his death he was about twenty-eight years of age and unmarried. He left as his heirs at law Hugo R. Johnstone, his father, and Kate Allerton Johnstone, his mother, who is the petitioner herein. He also left a brother, Vanderburgh Johnstone.

The decedent left a will dated December 13, 1928, which was duly admitted to probate by the superior court of the state of California in and for the county of Los Angeles. By this will he gave and bequeathed all his property to his mother, Kate Allerton Johnstone, and nominated her as his executrix.

On or about September 11, 1923, the decedent, as donor, made, executed, and de-

livered a certain agreement to Robert Allerton, as trustee, whereby the decedent transferred and assigned to the trustee certain properties therein described to be held by the trustee for the benefit of the donor and for the purposes and with the powers and conditions therein set forth. The trust so created will be designated as trust A hereinafter. The trust instrument provided that the income arising from said trust fund, or such part thereof as the trustee deemed advisable, could be paid by the trustee to the donor as the beneficiary under the trust, in such amounts, and if, as, and when the trustee deemed it advisable to pay the same to the beneficiary. The trust instrument further provided as follows:

"Upon the death of the said beneficiary, Allerton Johnstone, all of the property then held pursuant to this trust shall go to the heirs of the body of the donor in equal parts, or if there be no heirs, then to such person or persons or corporation as the said donor may have directed by his last will and testament; or, in the absence of any heir or heirs of the body or the donor and of any such testamentary disposition, then to the heirs at law of the donor according to the laws of descent of the State of Illinois in effect at the time of the death of the donor."

On or about the 21st of January, 1926, the decedent made, executed, and delivered a certain other trust instrument whereby he transferred and conveyed to Robert Allerton and Michael Phalen certain property therein described to be held by them in trust for the benefit of the decedent upon the terms and conditions therein specified. The trust thereby created will be referred to hereinafter as trust B. The trust instrument provided, among other things, that the net income should be used, so far as in the judgment of said trustees seemed wise, in the improvement of the trust property and in the payment to the donor for and during his natural life of an annuity in quarterly installments. This trust instrument provided further that:

"Upon my death, the said property and trust fund, principal and any accumulated income, shall go, be transferred, assigned and delivered to the heirs of my body, if any, in equal parts; if none, then to such person, persons, corporation or corporations as I may designate in my last will and testament, or if I shall have no heirs of my body and no will, then to my heirs according to the laws of descent of the state of Illinois. * * * This conveyance and agreement

may be modified from time to time or rescinded as I and the then acting trustees or trustee may in writing agree."

On the 13th day of March, 1926, Kate Allerton Johnstone, the decedent's mother, as grantor, made, executed, and delivered a certain trust instrument whereby she granted, assigned, and transferred to the First Trust & Savings Bank of Chicago, Ill., as trustee, certain property therein described to be held in trust for the benefit of the decedent upon the terms and conditions therein set forth. The trust created by this instrument will be referred to hereinafter as trust C. The trust instrument provided, among other things, that the sum of $300 should be paid each month to the decedent, and in the event that the net income for any one year, in the sole judgment of the trustee, should not be sufficient to provide for the payment, then the trustee was empowered to pay one-twelfth of the estimated net income for the year to said decedent each month. This trust agreement also provided as follows:

"Upon the death of the said Allerton Johnstone, the trustee is directed to pay the entire principal of and all unexpended net income from the trust property to the heirs of the body of the said Allerton Johnstone in equal parts, per stirpes, or if there be no such heir or heirs, then to such person or persons or corporation as the said Allerton Johnstone may have directed by his last will and testament; or, in the absence of any heir or heirs of the body of said Allerton Johnstone and of any such testamentary disposition, then to the heirs at law of the said Allerton Johnstone, other than his father, Hugo Richards Johnstone, according to the laws of descent of the State of Illinois in effect at the time of his death. * * *

"The grantor reserves the right and shall have the power at any time by an instrument in writing signed by her and delivered to the trustee during her lifetime to modify, alter and amend, but not to revoke, this instrument either in whole or in part provided, however, that the duties, powers and liabilities of the trustee shall not be substantially changed without its written consent, and provided further that the grantor shall have no right to revest in herself any right, title or interest in or to any part of the income or principal of the trust property."

In the estate tax return, the petitioner reported for taxation the value of the corpus of trust B. She did not report for estate tax purposes the value of either of the

other trusts. The Commissioner included in the gross estate the value of the corpus of each of three trusts and this action of the Commissioner was sustained by the Board of Tax Appeals. Petitioner contends that it was error to include in the gross estate the value of the corpus of any of the three trusts.

The tax upon trust C was determined by the Commissioner under section 302 (f) of the Revenue Act of 1926 (26 USCA § 1094 (f), which provides for the taxation of estates as follows:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated. * * *

"(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *"

If section 302 (f) is applicable to the corpus of trust C, it is equally applicable to the property covered by trusts A and B, since the will of the decedent was an exercise of the power of appointment contained in each of the three trust agreements, if it was an exercise of the power of appointment contained in any one of them.

The Supreme Court of the United States has recently considered subdivision (f) of this section of the Revenue Act of 1926 in Helvering v. Grinnell, 55 S. Ct. 354, 79 L. Ed. ——, decided February 4, 1935, and it is there stated:

"The crucial words are 'property passing under a general power of appointment exercised by the decedent by will.' Analysis of this clause discloses three distinct requisites: (1) The existence of a general power of appointment; (2) an exercise of that power by the decedent by will; and (3) the passing of the property in virtue of such exercise."

Petitioner contends that the power of appointment given to the decedent in the trust agreement herein involved was not a general power of appointment within the meaning of the above-quoted section of the Revenue Act because his effective exercise of such power by will was conditional upon his being without heirs or an heir of his body at the time of his death, and also that the power was not exercised by the decedent.

A power of appointment is general when it is exercisable in favor of any person the donee may select, and special or limited when it is exercisable only in favor of persons or a class of persons designated in the instrument creating the power. Fidelity-Philadelphia Trust Co. v. McCaughn (C. C. A.) 34 F.(2d) 600; Whitlock-Rose v. McCaughn (C. C. A.) 21 F.(2d) 164, 165; Lee v. Commissioner, 61 App. D. C. 33, 57 F. (2d) 399, 401. In Lee v. Commissioner, supra, it is said:

"Moreover, according to the weight of authority, a power of appointment by will alone is 'general,' when, as in this case, it does not restrict the donee to the appointment of any particular person or class of persons, but leaves him free to appoint such beneficiaries as he may desire."

In Whitlock-Rose v. McCaughn, supra, the court stated:

"* * * The power which the Congress had in mind, and which it called 'general,' was a power which could be exercised by either will or deed, and did not have to include both. A decedent could select either method, by will or deed, by which a power could be exercised by a donee. Either method, if the donee of the power is not restricted as to appointees, complies with the statute, and the power is general."

While it is true that the decedent could not have exercised the power if he had left issue surviving, this fact does not change a general power into a special power. See Johnson v. Cushing, 15 N. H. 298, 41 Am. Dec. 694. The contingency which would have prevented his exercise of the power did not happen, and decedent was entitled to exercise the general power of appointment given him in the several trust agreements.

In trust B the decedent had reserved power in himself, with the consent of the trustee, to modify or rescind the trust, and in trust C there was a reserved power in the donor, during her lifetime, to alter or modify the trust agreement, but not to revoke the same. These reserved powers, if exercised, might also have prevented the exercise by the decedent of the general power of appointment by will. However, these reserved powers were not exercised, and at the time of his death the decedent was entitled to exercise the general power of appointment under the terms of the trust

agreements. In trust C, although the decedent, the donee of the power, predeceased the donor, the power of the donor to alter or modify the trust agreement terminated with the death of the decedent at which time the trust, under the terms of the trust agreement, terminated. Thus at the time of his death the decedent had a general power of appointment over the property here involved.

Petitioner also contends that the decedent did not exercise the powers of appointment. The decedent was a resident of California at the time of his death and his estate was probated here. At the time trust A was established, the donor, decedent, was domiciled in Illinois as was his mother, the donor in trust C, at the time trust C was created. At the time trust B was established by the decedent, he was a resident of California, but the property conveyed to the trustees who were domiciled in Illinois was all located in Illinois and has since remained there as is also true of the property conveyed by the trust deeds which established trusts A and C. Under these circumstances the question of whether decedent exercised by his will the powers of appointment given him in the three trust agreements is to be determined by the law of the state of Illinois. Old Colony Trust Co. of Boston v. Commissioner of Int. Rev. (C. C. A.) 73 F.(2d) 970; see, also, Hill v. Carter (C. C. A.) 47 F.(2d) 869.

Under the law of Illinois the question is one of the intention of the decedent, and, if there was an intention to exercise the powers of appointment by his will, whether that intention is manifested directly or indirectly, positively or by implication, such intention will control. In Merchants' Loan & Trust Co. v. Patterson, 308 Ill. 519, 139 N. E. 912, 918, the Supreme Court of Illinois stated as follows:

"Technical language in a will is no more necessary to the exercise of a power than to the making of a devise. In either case the intention of the testator, if it can be ascertained, will be given effect, however informal may be the language in which it is expressed. In Funk v. Eggleston, 92 Ill. 515, 34 Am. Rep. 136, the rules laid down in many English cases in regard to the ascertainment of the intention of the donee of a power to act under the power, as well as Sugden's review of these cases in his work on Powers, are discussed, and it is stated that the fundamental principle deducible from the cases is that there should be a certain ascertainment of the intention of the donee of the power to act under the power, and that three classes of cases arose in which it was demonstrated to an absolute moral certainty there was an intention to execute the power, and these were, where there was a reference to the power, or to the subject or property covered by the power, or where the instrument would be inoperative without the aid of the power, and that by the weight of English authority there could be no execution of the power by a testator unless the case fell in one of these three classes. It was further said that this rule is altogether subordinate and secondary in its character, and if the circumstances indicated clearly the intention of the donee to work by the power the rule must give way, and the primary and fundamental rule, which requires only that the intention be made clear and manifest, would prevail. In Blagge v. Miles, 1 Story, 426, Fed. Cas. No. 1,479, cited in Funk v. Eggleston, supra, it is said:

" 'The main point is, to arrive at the intention and object of the donee of the power in the instrument of execution, and, that being once ascertained, effect is given to it accordingly. * * * If the donee of the power intends to execute and the mode be, in other respects, unexceptionable, that intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative. I agree, that the intention to execute the power must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation. If it be doubtful under all the circumstances, then that doubt will prevent it from being deemed an execution of the power. All the authorities agree, that it is not necessary, that the intention to execute the power should appear by express terms or recitals in the instrument. It is sufficient, that it should appear by words, acts, or deeds, demonstrating the intention.'

"The rule thus announced was adopted by the Supreme Court of the United States in Lee v. Simpson, 134 U. S. 572, 10 S. Ct. 631, 33 L. Ed. 1038."

The pertinent provision of the will of the decedent is as follows: "All my property I give bequeath to my beloved Kate Allerton Johnstone, Chicago, Ill." By this provision the decedent obviously intended to dispose of all the property over which he had the power of testamentary disposition.

The property in the three trust estates herein involved constituted substantially all of the property over which the decedent had the power of testamentary disposition. The value of the property of the decedent not covered by the three trusts amounted to only about one-eightieth of the value of the trust property. Had the power of appointment not been exercised, under the terms of the trust instruments the property in the two trust estates established by the decedent, trusts A and B, would have gone to his heirs at law of which his father was one. It is manifest from the terms of the will construed with reference to the circumstances under which it was written that the decedent intended to give the trust property to his mother alone, and that his intention was to exercise the powers of appointment given him in the three trust agreements.

No issue was raised in the case at bar as to whether the property here involved passed by virtue of the exercise of the power, that is under the will, as distinguished from the questions hereinabove considered and so we need not discuss that question. Helvering v. Grinnell, supra.

We conclude that the decedent had a general power of appointment by will as to the property here involved; that the decedent exercised this power of appointment by his will; and that the property passed by virtue of such exercise of the power. Therefore, the value of such property was correctly included in the decedent's gross estate under section 302 (f) of the Revenue Act of 1926.

Order affirmed.