(15 Misc. Rep. 44.)

## STEWART et al. v. KEATING et al.

### (Supreme Court, Special Term, New York County.   April, 1895.)

POWERS—EXECUTION OF—APPOINTMENT OF BENEFICIARIES UNDER WILL.

> A will gave to an unmarried daughter of testator the income during life of an undivided share of his residuary estate, left in trust; further providing, "And from and after her death I devise and bequeath the said share unto such of my lineal descendants as she may, by any last will and testament, appoint, and, in default of such appointment, to her heirs at law and next of kin." The daughter, who at the time of her death owned a large amount of property in her own right, made a will devising and bequeathing her entire estate in trust for the use of a niece and four nephews, lineal descendants of her father, with remainder to their children, or, in the event of the death of all without issue, to collateral relatives. *Held*, that the daughter's will was not an attempt to execute the power vested in her by her father, but, if so intended, would be inoperative, as varying from the terms and exceeding the limitations of such power, and that under the father's will the share of his estate left to her use vested on her death in her "heirs at law and next of kin."

Action by William R. Stewart and others against Thomas F. Keating and others, for partition; the plaintiffs claiming under the will of William C. Rhinelander, as heirs at law of Julia Rhinelander, and the defendants claiming through the will of Julia Rhinelander. Hearing before referee.   Finding for plaintiffs.

Before LOUIS MARSHALL, Esq., Referee.

Bowers & Sands (John M. Bowers, of counsel), for plaintiffs.
Robert C. Cornell, guardian ad litem.
Francis C. Huntington, for defendants.

MARSHALL, R.   The rights of the parties to this litigation depend upon the determination of the question as to whether or not it was the intention of Julia Rhinelander to execute the power of appointment conferred upon her by the will of her father, William C. Rhinelander, and, if so, whether the attempted execution

was valid and operative.    Her father died on July 9, 1878, and by
his will, after making various specific bequests, including a legacy
to each of his surviving children of $30,000, he devised and be-
queathed all the residue and remainder of his estate, real and per-
sonal, of every name, nature, and description, to his executors and
trustees and their survivors, upon the special trust and confidence
to take possession of and get in his residuary personal estate, and
to enter upon his residuary real estate, and to divide such residu-
ary, personal, and real estate into as many shares as there were
children him surviving.    The will then provides:

"In the event that my daughter Julia survive me, I direct my said executors
to apply the income of one of said shares of my estate to her use during her
natural life; and from and after her death I devise and bequeath the said
share unto such of my lineal descendants as she may, by any last will and
testament, appoint, and, in default of such appointment, to her heirs at law
and next of kin."

The estate of William C. Rhinelander consisted of lands exceed-
ing in value $1,000,000, and several hundred thousand dollars' worth
of personal property, consisting of bonds, mortgages, and other se-
curities.    The executors and trustees named in his will took pos-
session of the residuary estate, and administered the trust reposed
in them with respect to the share as to which a life use was created
for the benefit of Julia Rhinelander.    She died on October 11, 1890,
leaving a last will and testament, bearing date May 13, 1890, the
fifth clause of which reads as follows:

"All the rest, residue, and remainder of my estate, both real and personal,
wherever situated, whether devised to me by my uncle P. Rogers, or by my
father, William C. Rhinelander, or acquired by me in some other way, I
direct shall be divided into five equal parts by my executors hereinafter
named, to be held by my executors in trust to apply the rents, issues, and
profits of one of such parts to the use of my nephew William R. Stewart;
the rents, issues, and profits of another such part to the use of my nephew
Lispenard Stewart; the rents, issues, and profits of another such part to
the use of my nephew T. J. Oakley Rhinelander; the rents, issues, and profits
of another such part to the use of my nephew Philip Rhinelander; and the
rents, issues, and profits of the remaining part to the use of my niece, Mary
Stewart Witherbee,—all of them being lineal descendants of my father,
William C. Rhinelander, deceased. And for the purposes of such division,
at any time when they shall think best, I authorize the executors named in
this my will, the survivors and survivor of them, to enter into any agreement
for the partition and division of any property in which I may be interested
in common with others, and to divide the same as may seem to them proper,
and to execute such conveyances for the purpose of carrying out and making
such partition as they may think expedient.  Upon the death of either of my
said nephews or of my said niece, leaving issue him or her surviving, the
portion or part held to the use of the one so dying shall be divided equally
among his or her children, share and share alike; the share of each such
child who shall not have attained his or her majority to be held by my ex-
ecutors in trust for such child until he or she shall, respectively, arrive at
the age of twenty-one years, and, as each such child arrives at that age, to
be paid over accordingly.  If either one of my said nephews or my said niece
shall die leaving no children him or her surviving, then the share set apart
and held for the one so dying shall be equally divided among the then living
children of my other said nephews and of my niece, the share of each such
child (children of my said nephews and of my niece) who shall not have ob-
tained majority to be held by my executors in trust for such child until he or
she shall, respectively, attain the age of twenty-one years, and, as each child

arrives at that age, to be paid over accordingly. In the event that at the time of the death of either of my nephews, or of my niece, who are named as beneficiaries under this my will, neither my said niece nor either of my said nephews shall have any child or children, nor any one of them upon their death shall have left any child or children then surviving, in such case I give the moneys and property held by my executors and trustees to the use of the nephew or niece so dying to the children of my cousin Frederick W. Rhinelander, to be equally divided between them, the issue of any deceased child to take the share the parent would have taken if living."

Unless this provision operates as an appointment under the will of William C. Rhinelander, there has been a default in making such appointment, and the absolute ownership of the property which is the subject of the power, upon her death, became vested, in equal shares, in her sisters, Serena Rhinelander and Mary Rhinelander Stewart, and in her brother, William Rhinelander, as her heirs at law and next of kin. The first question that naturally arises is whether the testatrix intended by her will to avail herself of the power conferred upon her by her father. To ascertain such intention, it is important to consider the extent, character, and condition of her property. Under the will of George P. Rogers, a maternal uncle, she was the owner in fee of an undivided one-fourth interest in real estate largely exceeding in value the sum of $500,000. A partition suit involving this property had been instituted, which, at the time of her death, had not progressed further than to the appointment of a receiver of the rents and profits of the lands sought to be partitioned. She also had acquired by purchase other real estate, the value of which exceeded $100,000. She had also inherited lands worth several hundred thousand dollars from her grandfather. Her personal property at the time of the execution of her will amounted to more than $100,000, and consisted of bonds and mortgages and government securities. In addition to the legacy of $30,000 received by her under her father's will, she realized annually from 1878 to 1890, as her share of the income of the trust estate created by his will, the sum of $40,000. The language of the fifth clause of her will is therefore clearly satisfied without referring to the property to which the power of appointment related. She was the absolute owner of property that was devised to her by her uncle George P. Rogers. She had acquired absolutely, under the will of her father, a legacy of $30,000, and under his will, for 12 successive years, she had collected an annual income of $40,000, derived from his real estate. She had in other ways acquired other property. Of all this she sought to make disposition in the manner specified. She referred to the property thus dealt with as "the rest and residue of my estate." She spoke of it as property "devised to me," or "acquired by me." The power created by her father's will is not restated, nor is there any reference to it, directly or indirectly. Under the English authorities, this circumstance would be conclusive against an interpretation attributing to the testatrix an intention to exercise the power of appointment conferred upon her. In Jones v. Curry, 1 Swanst. 66, the will of one having a power to dispose of a fund consisting partly of real estate, and partly of household furniture, linen, and plate, and personal prop-

erty, and which contained a gift "of all of my estate and effects, of whatsoever denomination, and of my household furniture, with linen and plate," was held not to be an execution of the power, although her individual estate was of nominal value only, and was insufficient to satisfy the bequest contained in her will. In Evans v. Evans, 23 Beav. 1, a married woman, having a limited testamentary power of appointment of personalty, made her will, whereby, without referring either to her power, or to the property subject to it, she professed to dispose "of the property and income I am now or may become possessed of," and she then gave "her property" to her husband and her children. She died six years thereafter, at which time she had, independently of the property subject to the power, £93 of arrears of income, and a contingent reversionary interest in some trust moneys. The will was nevertheless held not to operate as an execution of the power. In Noel v. Noel, 4 Drew. 624, the testator, Charles Noel, being entitled to certain personal property derived indirectly through the wills of his father, Thomas Noel, and of Lord Wentworth, settled part of it, reserving a power of appointment, on his children, leaving a fractional part in himself. He made his will, whereby he "gave, devised, and bequeathed all the real and personal estate whatsoever and wheresoever situated, which he in any manner derived or became entitled to by or through the will of his father, or the will of Lord Wentworth or either of them, unto his two daughters," exclusive of his other children. It was held that the fractional part reserved to himself satisfied the language of the gift, and that it was not an execution of his special power. To the same effect is Wildbore v. Gregory, 19 Wkly. Rep. 967, L. R. 12 Eq. 482. The rule laid down in some of these cases has by statute been abrogated, and now, where a general power of appointment is conferred, a general devise of the real estate of the testator operates as an execution of the power, unless a contrary intention appears. But, so far as special powers are concerned, the doctrine illustrated by the cases cited remains in full force. The subject of the execution of the power is fully discussed in Blagge v. Miles, 1 Story, 426, Fed. Cas. No. 1,479. The rule there laid down is that if the donee of a power intends to execute it, and the mode be in other respects unexceptionable, the intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and positive; that the intention to execute the power must be apparent and clear, so that the transaction is not susceptible of any other interpretation; but if it be doubtful, under all the circumstances, then that doubt will prevent it from being an execution of the power. This case was approved in Lee v. Simpson, 134 U. S. 572, 589, 10 Sup. Ct. 631. An excellent collection of cases illustrating this rule is contained in 18 Am. & Eng. Enc. Law, tit. "Powers," pp. 930–936. In this state the question as to whether or not a power of appointment is exercised is made a question of intention, by express statutory enactment. In 1 Rev. St. p. 737, § 124, it is provided:

"Every instrument executed by the grantee of a power conveying any estate or creating a charge which such grantee would have no right to have or

create unless by virtue of his power shall be deemed a valid execution of the power although such power be not recited or referred to therein."

Section 126 provides:

"Lands embraced in a power to devise shall pass by a will purporting to convey real property of the testator unless the intention that the will shall not operate as an execution of a power shall appear expressly or by necessary implication."

The same rule has been judicially declared to be applicable to personalty as well as to realty.    Hutton v. Benkard, 92 N. Y. 295.

The case of Insurance Co. v. Shipman, 119 N. Y. 324, 24 N. E. 177, presents a clear interpretation of the scope and purpose of these provisions.    It was held that the first of these sections was not intended to change the existing rules of law, and that whenever, in addition to a power, the grantee thereof has an independent interest in property, whether legal or equitable, the rule of the statutes does not apply, and the instrument will not be deemed an execution of the power, but only a conveyance of the independent interest. There, a will devised property to a woman so long as she should remain testator's widow, and, upon her death or marriage, to their children.    The widow was made executrix, and the will authorized her to make advances from the property, from time to time, in her discretion, to the children, for maintenance and support, and empowered her to mortgage, lease, and dispose of such property for the purpose of carrying into effect the provisions of the will.    The widow remarried, and subsequently mortgaged the real estate, in her individual name, to secure a loan.    The mortgage contained no reference to the character of the mortgagor, as executrix, or to the power to mortgage contained in the will.    It was held that the mortgage was to be deemed restricted to the individual interest of the mortgagor, as dowress, and not as an exercise of the power conferred by the will.    In White v. Hicks, 33 N. Y. 383, it was distinctly held that, where a power of appointment was conferred, the intention of the donee of the power to exercise, or not to exercise, the power, was to be gathered from such circumstances as indicated the state of mind of the donee of the power.    The case of Blagge v. Miles, 1 Story, 426, Fed. Cas. No. 1,479, was cited with approval; and the decision turned upon the intention to be deduced from the state of the testator's property at the time of the alleged execution of the power, viewed in connection with the language of his will. There is no language in the will of Julia Rhinelander which expressly declares it to be her intent not to execute the power conferred upon her, but such intention is deducible therefrom by necessary implication.    As was said by Mr. Justice Strong in Blake v. Hawkins, 98 U. S. 326:

"After all, an appointment under a power is an intent to appoint, carried out; and, if made by will, the intent and its execution are to be sought for through the whole instrument."

The intention of Julia Rhinelander becomes apparent when we consider the nature of the estate to which the power of appointment was attached, and the powers conferred by Julia Rhinelander

upon her executors with respect to the property of which she made disposition. (1) By the will of her father, all of his residuary estate was made the subject of a trust which involved the division of such estate into four shares. Each of these related to an undivided one-fourth of such residue, and the income from each fourth was payable to one of his children during life, and the power of appointment was given, as to each of such fourths, to one of his children. Julia Rhinelander had no power to partition this property during her life. Neither could she confer upon her executors the right to partition the property which was the subject of this trust. Yet, by her will, after directing that her residuary estate should be divided into five equal parts by her executors, she declared that, for the purposes of such division, at any time when they should think best, they might enter into any agreement for the partition and division of any property in which she might be interested in common with others, and to divide the same as might seem to them proper, and to execute such conveyances for the purpose of carrying out such provision as they might think expedient. This provision of her will was fully satisfied when applied to the property which she derived from the will of her uncle George P. Rogers, and to such other real estate which belonged to her in her own right, however acquired. But it certainly could not have had reference to the share of the trust estate created by her father's will over which she had the power of appointment. (2) By her will she further empowered her executors to make investments of any of her estate, real and personal, in first-class bonds and mortgages on improved real estate, or in certain government bonds, or in railroad bonds of a specified description. While she had the right to permit her own property to be converted into money, and to be invested in such manner as she saw fit, she had no right whatsoever to direct the conversion of any of the real estate which was the subject of the power into personalty, or to invest such proceeds, or any part of the personalty constituting the share of her father's estate of which she enjoyed the income, in such speculative securities as railroad bonds. (3) She further conferred upon her executors the power to lease any part of her real estate for not exceeding two terms of 21 years each, and if they deemed it expedient, for the purpose of increasing the rents of any part of her real estate, to make improvements on the same by building, rebuilding, or altering buildings. She gave them both the power to make such improvements, and to apply towards defraying the expense thereof any part of her personal estate. It is inconceivable that she should have intended to permit her executors to lease any portion of the real estate which constituted a part of her father's residuary estate for the period of 42 years, or to use any portion of his personalty in paying for improvements upon her real estate. (4) She further gave to her executors power to sell and convey any or all of her real estate at such times, to such persons, and upon such terms as they might deem advantageous. It is impossible to believe that she could have assumed the right to authorize the sale of any of the

realty which constituted a portion of her father's estate, but it is rather to be inferred that in this provision, as in all others, the word "my," which is repeated and reiterated on every occasion where in her will she refers to any property whatsoever, was intended to refer to property owned by her in her own right, and not to property to which she had not the semblance of legal title. None of these extraordinary powers were included in the simple power conferred upon her by the will of William C. Rhinelander with respect to his property. That was expressly confined to the bestowal of the right to make appointment unto such of his lineal descendants as she might designate. The power of disposition thus given did not relate to property to be dealt with as she saw fit, but to specific property, as it existed, not at the time of the death of the donee, but at the death of the creator of the power. (5) But the intention of the testatrix becomes even more apparent when it is considered that under her will, in a certain contingency, the property of which she seeks to make disposition is to go to the children of her uncle Frederick W. Rhinelander, who are not lineal descendants of William C. Rhinelander, her father, but are related in a collateral degree only. It is not possible that Julia Rhinelander could have believed that she was exercising the power of appointment under her father's will when she created a trust during the lives of his lineal descendants, and made it possible for the absolute ownership of the property which was the subject of the power to vest in his collaterals. To ascribe such an intention to the testatrix would impute to her a deliberate purpose of violating the express wishes of her father, and a total disregard of the limitations imposed upon the created power, —a purpose which she is not to be deemed for a moment to have entertained.

But, assuming that Julia Rhinelander attempted to exercise the power of appointment bestowed upon her by the will of her father, she failed in her attempt to execute such power; and her will, so far as it may have sought to dispose of the property which was the subject of the power, is inoperative, void, and of no legal effect. The power was not a general power, but was special and limited in its character. It enabled the donee to devise and bequeath the property in which she had a life estate "unto such of my lineal descendants as she may, by any last will and testament, appoint." She was therefore limited in respect to the persons to whom she might devise and bequeath the property, and the manner in which she could dispose of the same. The power of appointment was to be exercised by her last will and testament, and by devise and bequest to the lineal descendants of the testator. Instead of thus disposing of the property, the testatrix sought to create five trusts,— one in favor of each of her four nephews, and one in favor of her niece. These trusts were to continue during the lives of her nephews and niece designated in her will, and, upon the death of either of them, provision was made for the distribution of the property so held in trust among the children of the deceased nephews or niece, provided such children had attained majority; otherwise the trust

was to continue until such children should, respectively, arrive at the age of 21. In the event of the death of either of the nephews or the niece without children, provision was made for the distribution of such trust estate among the children of the other nephews or of the niece; and, in the event that none of the nephews or the niece left any child or children, the property which was the subject of the power of appointment was to go to the children of a cousin of the testatrix, Frederick W. Rhinelander, who was not a lineal descendant of William C. Rhinelander, the creator of the power. The disposition thus made of the property did not constitute a devise or bequest to the lineal descendants of William C. Rhinelander, within the meaning of the will. The legal title of the property was vested in trustees during the lives of the four nephews and the niece mentioned, and such trusts were to continue, in a certain contingency, after their death. This cannot be deemed to be the equivalent of a devise or bequest to the lineal descendants of William C. Rhinelander. Not content with this departure from the manifest purpose of the creator of the power of appointment, the will provides that, in a contingency not at all unlikely to occur, the property which was expressly intended for his lineal descendants was given to those who were related to him in a collateral degree only; thus nullifying his purpose, and bestowing upon collaterals that which was intended to be enjoyed by his lineal descendants. While there is comparatively little authority in the American courts on this subject, it is nevertheless quite apparent that such execution of the power of appointment is ineffectual. In Stuyvesant v. Neil, 67 How. Prac. 16, a deed of trust empowered the donee to apportion by will, or other instrument, in writing, certain property among her children and their descendants; and, in default of such appointment, the property was to be divided equally among her children who might be living, and their descendants, if any should have died leaving lawful issue. It was held that she could not, under the power conferred, limit the trust estate to an estate for life in her children, with remainder to their issue, but was required to apportion the property itself, and all rights incident to ownership, and not a limited interest therein. In reaching this conclusion, stress was laid upon the provision contained in the deed of trust relative to the disposition of the subject of the power in the event of the donee's failure to exercise it. See, also, Wickersham v. Savage, 58 Pa. St. 365; Pepper's Appeal, 120 Pa. St. 235, 13 Atl. 929; Loring v. Blake, 98 Mass. 253. The English authorities also bear out the proposition that where a power is limited, as in the present case, an attempt to exercise it in a manner foreign to that described in the power of appointment is ineffectual at law, although chancery will sometimes enforce a defective execution of a power. In Farw. Powers (Ed. 1893) p. 325, the author says:

"Where the power is limited, it appears to be a question of construction whether the power authorizes a direction to transfer the fund to other trustees. An appointment of a fund standing in the names of trustees, to other trustees, in trust for some of the objects, may be a good equitable execution, so far as the interests of the appointees are concerned, but the machinery

adopted may exceed the power. The appointees' beneficial enjoyment is not affected, but the trustees of the original settlement will not get a good discharge, in such a case, if they transfer the fund to the new trustees. * * * A settlor or testator who vests funds in trustees, and provides machinery for filling up vacancies in their number, may well be taken to have intended that the fund shall remain in the custody of the persons to whom he has intrusted it until some beneficiary absolutely entitled is ready to receive it, although he has given power to another to say who that beneficiary shall be. He may well trust, say, his daughter to select which of her children shall take the fund, and yet not desire her to nominate the trustees who are to hold it." Busk v. Aldam, L. R. 19 Eq. 16; Von Brockdorff v. Malcolm, 30 Ch. Div. 172; Scotney v. Lomer, 31 Ch. Div. 380.

These authorities are quite in point when it is considered that, under the system of law regulating powers which prevails in this state, resort cannot be had to equity to supply defects in the execution of a power. Hence, if a power is executed in disregard of the limitations imposed by the instrument creating the power of appointment, the attempted execution is ineffectual. This is made clear by the notes of the revisers in 3 Rev. St. (2d Ed.) p. 591, where they say:

"The strictness of courts of law in requiring literal observance with the most trifling forms is not more remarkable than the power assumed by the court of chancery of dispensing in similar cases with the most necessary. Indeed, there is nothing more calculated to excite our surprise than the extraordinary jurisdiction which has been exercised by courts of equity in supplying the defective execution of powers. * * * The present state of the law in relation to the execution of powers leads us to attach a peculiar importance to the rules which we have proposed on the subject. These rules will not only render the system of alienation consistent, but, as it seems to us, will relieve the execution of powers from any serious embarrassment, and, by avoiding the extreme rigor to which courts of law have been carried, remove any necessity or pretext for the interference of equity. "

While English cases may undoubtedly be found in which the court of chancery has sustained an appointment to trustees where the power did not expressly confer the right to appoint to trustees, there will be discovered peculiarities of language or an absence of limitation which were deemed sufficient to indicate a purpose on the part of the testator not to exclude such a mode of executing the power of appointment. Here, however, there is every reason to believe that the testator intended that, upon the death of his daughter Julia Rhinelander, such of his lineal descendants as she might select should have the immediate and absolute enjoyment of his property, without the intervention of trustees. Reference to other portions of his will so indicates. The provision made with respect to the share of his property which was devised in trust during the life of his daughter Mary Rhinelander Stewart was to give the absolute title thereto to her children after her death. So with respect to the share given in trust during the life of his son William Rhinelander. Upon his death the absolute ownership of the share was given to his children, Oakley and Philip Rhinelander. Julia and Serena Rhinelander never having married, the testator evidently intended to leave it to them to select such of his lineal descendants as they might see fit to make the recipients of his bounty; and there is no more reason for supposing that he intended that they

·should defer the beneficial enjoyment of these shares of his estate until after the termination of a series of trusts than that he so intended with respect to the shares of which the remainders were devised and bequeathed to the heirs at law and next of kin of Mary Rhinelander Stewart and William Rhinelander.

For these reasons, I am of the opinion that the complainants are ·entitled to a decree of partition as prayed for in the complaint, and ·that their rights as heirs at law and next of kin of Julia Rhinelander are to be determined by the provisions of the instrument ·executed on March 28, 1891, wherein the heirs at law and next of ·kin of Julia Rhinelander provided for the disposition of the prop·erty as to which she possessed the power of appointment. ·