(36 Misc. Rep. 79.)

### KEMP et al. v. KEMP et al

(Supreme Court, Special Term, New York County. October, 1901.)

**1. WILL—CONSTRUCTION—RESIDUARY LEGACY.**

Testator gave all his residuary estate to trustees for his wife and three children, excluding his son G., and gave his wife power to appoint two-fifths of it among all four of the children. By her will she created a trust for G., but excluded him and his issue from any share in the residue remaining after the trust. The will also provided that no installment should be paid him unless he first satisfied his trustees that a proportion of the last previous installment had been used for the support of his children. It appeared that the general conduct of G. had been unsatisfactory, and that neither testator nor his wife had any confidence in his capacity to take care of money. *Held,* that G. was not entitled to share equally with his brothers and sisters in the residue of the two-fifths in addition to the trust.

**2. SAME—POWER OF APPOINTMENT.**

Though the power of appointment was limited to the four children, the donee could create a valid trust for G., and was not limited to appointing the whole sum to one of the children.

**3. SAME—FAMILY SETTLEMENT.**

Where all the parties in interest under a will executed an instrument under seal recognizing the validity of the appointment by the testatrix in trust, it would be enforced as a family agreement, though without consideration, and would not be rendered invalid by a claim of G. of a right to share in other property than that conveyed by the trust.

**4. SAME—POWER OF APPOINTMENT.**

Where testator gave his estate to trustees for his wife, and gave his wife power to appoint two-fifths of it among four of his children, such power was not imperative, but its exercise was in the discretion of the donee.

Action by Edward Kemp and others against Arthur Tyron Kemp and others to construe a will. Judgment for complainants.

The clause in the will of Juliet Augusta Kemp, stated in the opinion as recited in the complaint, was as follows: "And all the residue of such two-

fifth parts of such residuary estate of my said deceased husband, George Kemp, by his will devised and bequeathed to be held in trust for my benefit during my life, which shall not be required to be set apart and held by virtue of this my will to produce the aforesaid net annual income of nine thousand dollars, I give, devise, bequeath, and appoint upon my death, in fee simple and absolutely, to such of the children of my said deceased husband, George Kemp, as shall survive me, and the issue who shall survive me of such of the children of my said deceased husband, George Kemp (other than my said son George Kemp), as shall have previously died, in equal shares, per stirpes, and not per capita; such then living issue of any deceased child of my said deceased husband (other than my said son George Kemp) to take together, in equal shares, per stirpes, and not per capita, the share of such residue of such two-fifth parts of such estate which the parent of such issue would have taken if living; but if my said son George Kemp shall survive me, and shall die before the expiration of three months next after my death, or if for any reason the exercise by this article of my will of the power of appointment by the will of my said deceased husband, George Kemp, granted unto me in respect of the part of the said two undivided fifth parts of the residuary estate, real and personal, of my said deceased husband, George Kemp, required to be set apart and held to produce such annual net income of nine thousand dollars, shall be invalid, or if my said son, George Kemp, shall die before me, then and in either of such cases, upon my death, if for any reason such exercise by this my will of such power of appointment be invalid, or if my said son George Kemp shall die before me, and upon the death of my said son George Kemp if he shall survive me and shall die before the expiration of three months next after my death, I give, devise, bequeath, and appoint all of the capital of the said two-fifth parts of such residuary estate, real and personal, and in case my said son George Kemp shall have survived me, and shall have died before the expiration of three months next after my death, likewise all income thereof which shall have accrued after my death unto such of the children of my said deceased husband, George Kemp (other than my son George Kemp), as shall then be living, and the issue then living of such of the children of my said deceased husband, George Kemp (other than my said son George Kemp), as shall have previously died, in equal shares, per stirpes, and not per capita; the issue then living of any child of my said deceased husband (other than my said son George Kemp), who shall have died before me, to take together in equal shares, per stirpes, and not per capita, the share which the parent of such issue would have taken if living."

Evarts, Choate & Beaman (Treadwell Cleveland and William V. Rowe, of counsel), for plaintiffs.

T. T. Sherman, for defendant executors of Juliet Augusta Kemp, Emma Mears, and V. G. Kent.

John Larkin (John M. Bowers, of counsel), for defendants A. T. Kemp and wife, Marion M. Kemp, Juliet A. Tyng, and Stephen H. Tyng.

E. G. Stedman, for defendant Stephen H. Tyng.

Smith, Conway & Weed, for defendant George Kemp.

W. H. Hamilton, guardian ad litem for defendants Chouteau Kemp and Gladys Kemp; also counsel for defendant Lilia Kemp.

Clarke & Culver (T. G. Lewis, of counsel), for defendant Eliza Caldwell.

Emmet & Robinson, for New York Life Ins. & Trust Co.

John M. Bowers, guardian ad litem for Mary I. Kemp, Jr.

FITZGERALD, J. The principal questions to be decided are: First, the construction of the clause in the will of Juliet Augusta Kemp recited in the complaint; second, the validity of the trust

created by her will for the benefit of her son George; and, third, was the power granted her to set apart in her lifetime or appoint by will an imperative power? To properly determine these propositions, it will be necessary to consider together the wills of the father and mother, as both instruments appear in many respects to have sprung from a common inspiration, and the same underlying purpose manifests itself in frequent and marked degree throughout each of these testaments. The family of George Kemp, the elder, at the time of the execution of his will, consisted of a wife and four children; and in this connection let it be noted that his residuary estate is divided into five parts. Three separate trust estates, consisting of one-fifth part each, are created for the benefit of three of his children; and the remaining two-fifths he devises in trust, the net income to be applied to the separate use of his wife during her life. There must have been some reason operating in the mind of the testator for the discrimination shown against one of his children, and when it is remembered that the one so discriminated against was the eldest son, the bearer of his father's name, it will be realized the controlling cause could not have been slight. The testator must have entertained serious apprehension as to George's worthiness, and yet that he was very much concerned about him, and anxious that he should partake fully with the other children in the equal enjoyment of the paternal estate, is evident from the very scheme of its division. Power to dispose of the capital of these two-fifths was granted Mrs. Kemp under certain limitations, which later on will be more fully discussed; but for the purpose of reasoning therefrom the question of her intent in employing the excluding phrase in the clause disposing of the residue of the capital, after making provision for George by the creation of a trust, it will be sufficient to state that by the terms of the original will of her husband it was provided that, in the event of failure upon her part to exercise the power, then, upon her death, such capital was to be distributed among all of his children, but by the fifth paragraph of the second codicil, executed some years later, George and his issue were, under such circumstances, absolutely excluded from any participation therein. There is certainly strong ground for assuming that something must have occurred meanwhile to account for this radical alteration of plan. The father's doubts regarding the character of his son, it is fair to assume, had been increased; and yet that he had not positively lost all confidence in his possible future reformation is also very plain, for the reason that the power, as created by the will, is neither curtailed nor limited by the codicil, but to the donee's judgment is entirely left the determination of the question whether, or not at all, and if at all, to what extent, George should participate in the estate. There was still a lingering hope that time might set in operation some hidden spring, suppressed in the nature of his firstborn, which would prompt him to worthier conduct; and to a wife's sense of duty and a mother's love was confided the power, in such a wished-for happening, to bestow upon the discarded one that generous treatment, the denial of which it requires but superficial insight to discern was the chief sorrow of the testa-

tor's declining years. By the will of the testatrix a trust is created for the benefit of George, and her executors are directed to set apart a sum out of the two-fifths parts of her husband's estate, the income of which she enjoyed for life, sufficient in their judgment to produce an annual income of $9,000, and that such sum be paid in quarterly installments to her son George upon his furnishing satisfactory proof to the trustees that he had properly provided within the preceding quarterly period for the maintenance and education of his children. It is impossible to read the provisions of this trust without being convinced of the mother's want of confidence in her son. How can they be construed otherwise than as declarations upon her part that he could not be relied upon to discharge the most sacred of obligations,—a parent's duty to his offspring? Nothing can be predicated upon the idea that she was devoid of affection for her grandchildren, for the contrary has been proven. Did she not by her will make an absolute gift of $10,000 to each of them from her own estate? Was not her love for them breathed in every line of the letters read in evidence, and was not this love the inspiration of her precaution to guard them against possible parental dereliction? Were they not in her thoughts when she provided for George's income, and was not this income to be reduced in the event of both dying during his life? Is it supposable that she intended to include him in, and exclude them from, any benefits she designed conferring under such circumstances? Was it her purpose to intrust the untrammeled disposition of hundreds of thousands of dollars to the identical person that in another clause of the same instrument she limits in the administration of the comparatively small revenues of a trust fund? Was it her intent to appoint George to receive at her death one-fourth part of the two-fifths parts of her deceased husband's estate, when she directs that, if he (George) shall die within three months thereafter, all of the capital of the said two-fifths parts, together with all accrued income thereof, shall go to these children other than George? Is her recital of the extent of the power which she understood was granted by the terms of her husband's will not a marked indication of her intent? That her understanding thereof was erroneous is immaterial when it is considered only as an aid in determining the single issue of intent. How does the extrinsic evidence given upon the trial bear upon the question of construction? "It must be considered for the purpose of enabling the court to see the facts as the testator saw them" (Morris v. Sickly, 133 N. Y. 456, 31 N. E. 332; Stuart v. Brown, 11 App. Div. 492, 42 N. Y. Supp. 365), and to apply his language as he understood and intended it (Page, Wills, pp. 973, 974, § 817).

It was said by Earl, J., in Stimson v. Vroman, 99 N. Y. 79, 1 N. E. 147:

"We must arrive at the intention of the testator as well as we can; and for that purpose in such a case we may consider all the circumstances surrounding the testator when he made the will, * * * not to put new language into the will, but to get out of the language the sense which the testator really meant to embody therein. Doe v. Provoost, 4 Johns. 61, 4 Am. Dec. 249; Shulters v. Johnson, 38 Barb. 80; Goodhue v. Clark, 37 N. H. 525."

The intention of the testatrix, as was said in Trust Co. v. Baker, 165 N. Y. 488, 59 N. E. 257, must be regarded "as the polar star of construction."

It clearly appears from the scheme of the wills of the donor and donee, particularly in the light of the facts and circumstances presented, that neither of them had any confidence in the capacity of George to manage an estate of which he had absolute control; and the conviction is forced upon the court, after careful deliberation, that the testatrix understood and intended the excluding phrase, as used in the disputed clause, to apply to George as well as to his issue, and that his claim, under the terms of his mother's will, to a one-fourth part of the residue of the two-fifths parts of his father's estate, devised in trust for her benefit during life, has not been established.

The next question to be disposed of relates to the validity of the trust. The power conferred upon Mrs. Kemp was a special power in trust. Real Property Law, § 115. She might during her lifetime set apart to George one of the two-fifths parts bequeathed in trust for her benefit, or any portion thereof, and thereupon such fifth part or portion thereof was to be withdrawn and converted into a trust for his benefit upon like terms with the trust created by the second article of his father's will in reference to the special bequest of $100,-000. This power she did not exercise. She also had the power to appoint by will between and among the children of the donor living at the time of her death (all four having survived her) the entire of the two-fifths parts (no portion thereof having been withdrawn) in such proportions and at such time or times as "by her last will and testament she might direct and appoint to receive the same." It is contended by the children of the donor (other than George) that this power has not been exercised, and that the trust created by the donee is invalid. They claim that all she was vested with power to do by will was to direct and appoint the proportions and times when the two-fifths parts should be accounted for, and conveyed to and distributed among her children,—in other words, that she might give outright to any one of them the whole of the two-fifths parts; that, for example, if she appointed George to receive it, the power was, beyond all question, ample to sustain the appointment, but that it was transcended when out of a part of the estate which she might absolutely give him in its entirety she attempted to create a trust for his benefit. This attack upon the trust necessarily remits us to a further consideration of the will of George Kemp, the instrument by which the power was created. That the language thereof must be construed in the light of its general scheme and the extrinsic facts proven on the trial will scarcely be disputed, even by those who assail the validity of the trust. What facts are so established? That the general scheme of the testator in providing for George was in the form of trust limitations, and in no instance by absolute gift. That he had the utmost confidence in his wife's judgment and conscientiousness. That he was acquainted fully with her views regarding George. That her views were identical with his own, and were based upon common knowledge and experience. In determining Mrs. Kemp's intent regarding the use of the excluding phrase, these facts

were very properly urged upon the court as being entitled to great weight; and are they not of equal force in determining the intent of the donor in creating the power, as of the donee in executing it? Can the language of the will of the donor, so illuminated, be held to have been used to create a power to appoint George to receive a gross sum, which might be readily squandered, and prohibit his appointment to receive a fixed income, when, according to all the circumstances shown, such limited provision was, in the opinion of the testator, the only provision that could be of the slightest permanent advantage to him? Van Brunt, P. J., in Maitland v. Baldwin, 70 Hun, 270, 24 N. Y. Supp. 29, said:

"The familiar rule in reference to the validity of appointments under powers contained in wills seems to be that the appointment is to be read as though it had been incorporated in the original will."

It is further claimed that under a power of appointment among a class no trust can be created. Two cases decided in this state are cited in support of this last proposition. Stewart v. Keating, 15 Misc. Rep. 44, 36 N. Y. Supp. 913; Stuyvesant v. Neil, 67 How Prac. 16. In the former the extent of the decision appears to have been that, under a power to appoint among lineal descendants of the donor, its attempted exercise so as to include, in a contingency not unlikely to happen, collateral relatives, must be held invalid; and in the latter the learned court seems very properly to have held that where the intent was clearly to grant the power to select the objects out of the class named, and apportion the property itself, the trustee could not limit the interest therein of his appointees. The other cases referred to hold simply that where a power of appointment is given, limited to a class, and there is but one person living belonging to that class at the time of the execution of the power, such sole survivor takes under the instrument creating the power, and not by the act of the donee. Wickersham v. Savage, 58 Pa. 365; Pepper's Appeal (Pa. Sup.) 13 Atl. 929, 6 Am. St. Rep. 702. While I cannot find any direct authority in this state upon the point involved, still the weight of the reasoning in analogous cases appears to establish the validity of the trust created by Mrs. Kemp's will. Beardsley v. Hotchkiss, 96 N. Y. 201; Crooke v. County of Kings, 97 N. Y. 421; Genet v. Hunt, 113 N. Y. 158, 21 N. E. 91; Towler v. Towler, 142 N. Y. 372, 36 N. E. 869; Hillen v. Iselin, 144 N. Y. 365, 39 N. E. 368. Moreover, the action of the only persons who could be at all affected adversely by the appointment as made disposes of any lingering doubt upon the subject. By a document under seal executed by all of these parties its validity is recognized, and the trustees of the father's estate are authorized to do all the acts necessary to carry it out. Many payments of quarterly installments have already been made to the trustees appointed by Mrs. Kemp. It is claimed that this consent was revocable, and has been revoked; that it was nudum pactum, and merely a direction, and without any consideration. But even so; family arrangements may be upheld where, in cases between strangers, like agreements would not be enforced. Story, Eq. Jur. (13th Ed.) § 132. "The termination of a family controversy is sufficient consideration for an agreement." Pars. Cont.

(8th Ed.) 455. And there are abundant authorities to support the proposition that family agreements may be supported without any consideration. Souverbye v. Arden, 1 Johns. Ch. 240, and cases cited. It is possible that in executing this release the parties thereto expected that George would not assert any additional claims, but there is no such recital in the instrument; nor was any pretense made on the argument or in the briefs that the assertion of a further claim by George was necessary to warrant a revocation. What is insisted upon is that this paper was a mere permission, which might be revoked at any time; that the trustees were released from responsibility as long as it was extant, but that they were without power, and George without redress, should even whim or caprice induce its recall. If without action of any kind upon the part of George this consent could be withdrawn, his subsequent conduct cannot, in fairness, be urged as justifying such a course, especially when one of the parties so claiming has actuallly acted as a trustee of the trust he now seeks individually to attack.

The last of the disputed propositions, that the power granted was an imperative power, must be held not established, for the reasons stated in Tilden v. Green, 130 N. Y. 54, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487: "Trust powers are imperative, and their performance may be compelled in equity, unless their execution or nonexecution is made expressly to depend on the will of the grantee;" and, according to the fair and reasonable interpretation of the language used in creating the power in the case at bar, its execution or nonexecution was entirely left to the discretion of the donee. It may be well claimed that the requirement that George satisfy the trustees that he applied a certain amount to the support of his children out of the proceeds of one installment before he should become entitled to receive another is invalid, but, if so, George is the only one who could object, and he makes no objection.

Judgment is therefore directed as prayed for in the complaint, in accordance with the above, except that under the stipulation the question relating to trade-marks is for the present withdrawn. Judgment accordingly.