H. B. KING, Executor, v. E. E. RICHARDSON, et al.

Middle Section.    March 10, 1928.

536

S. B. Smith and Silas Williams, of Chattanooga, for complainant. Spears & Spears, of Chattanooga, for defendants.

DeWITT, J. This was an action of ejectment involving title to eight tracts of land. The Chancellor awarded tracts number one, two, four, six and seven, and part of number five to complainant, H. B. King, Executor. As to tract number eight, the Chancellor held that complainant was entitled to all of this land, except the mineral interests therein, which he held were vested in the defendants.

The defendants have appealed from all of the decree of the Chancellor and they insist that they are entitled to all of these lands and all of the interests therein. The complainant has appealed from that part of the decree awarding the mineral interests in tract number eight to the defendants.

We will first deal with the issues involved as to tract number eight.

Tract number eight is the eastern portion of a tract of 5000 acres, granted by the State of Tennessee to James M. Bryson on July 31, 1841, by grant number 8390. This whole tract was divided by a processional survey and the western portion of said tract is not involved in this cause.

On January 25, 1860, James M. Bryson conveyed this land to Robert S. Raulston. On January 30, 1860, Robert S. Raulston conveyed to William L. Mitchell, James Edmondson and Archibald Fitzgerald the same land by deed with covenants of general warranty, for the consideration of $4000 to him paid; "said Robert S. Raulston reserving and excepting in this conveyance the timber and soil upon the tract hereby conveyed to him, his heirs and his assigns, except so much thereof as may be expedient and necessary in mining operations for the building of roads, tracks, workmens' cabins, coal yards, etc., that said timber be taken and structures erected on the top or side of the mountain, said Raulston giving and granting however to the said parties of the second part the right of way through any uncultivated lands of said Raulston not within the boundary of this deed, and also the right to erect coal yards on Battle Creek so as not to interfere with his cultivated grounds. Said Raulston reserving without qualification his mill and mill privilege within the boundary hereby conveyed, said Raulston hereby conveying to said Mitchell, Edmondson & Fitzgerald all the mines of coal and the minerals under said soil, and all the incidents pertaining to the successful working and development of the same, subject to the exceptions and reservations herein expressed."

This deed therefore passed the title to the mineral interests in said tract of land; but on the same day, January 30, 1860, the said Mitchell, Edmondson & Fitzgerald executed an instrument reciting the aforesaid conveyance to them and then as follows:

"Now in consideration for said land so conveyed to us, we promise and obligate ourselves to pay said Robert S. Raulston $4000 by the first day of September, 1860, and in default of the payment of said $4000 on or before the first day of September, 1860, such default shall operate as a rescission of the contract of sale at the option of either party, and should either party so elect to regard the contract as rescinded, we hereby authorize and regularly constitute and "appoint A. A. Hyde our true and lawful attorney in fact upon notice to that effect from either party, for us and in our name to reconvey to the said Robert S. Raulston said tract of land as described in the deed herein referred to, and such interests therein as is vested in us by said conveyance, the reconveyance however only to warrant the title against any claim made by ourselves and those claiming through or under us. And we do hereby ratify and confirm any act or thing our said attorney may lawfully do in the premises as fully and completely as if we were present and doing the same ourselves, and this power of attorney for purpose expressed we hereby make and declare to be irrevo-

cable by us otherwise than by a performance of the obligation impressed in this instrument.''

By deed dated February 18, 1860, the said Mitchell, Edmondson and Fitzgerald conveyed said tract to the Battle Creek & Tennessee River Mining, Manufacturing & Transportation Company, subject to the exceptions and reservations expressed and contained in the said deed of Bryson to Raulston of January 30, 1860. The consideration recited was $5000 and other valuable considerations received, for this and other tracts therein described.

On March 1, 1860, Robert S. Raulston conveyed to the Battle Creek & Tennessee River Mining, Manufacturing & Transportation Company for the consideration of $2000 to him paid, the soil and timber upon the J. M. Bryson 5000-acre tract, and as to said tract reciting: ''the mineral properties of which tract were by me conveyed to William L. Mitchell, James Edmondson and Archibald Fitzgerald on the 30th day of January, 1860, and registered in the register's office of Marion county in Book H, pages 437-438, and by them conveyed to the aforesaid Company by deed bearing date the 18th day of February, 1860, and registered in the register's office of Marion county in Book H, page 441 (amongst other lands) which deeds above referred to with this conveyance vest in said Company a title in fee-simple absolute to all said James M. Bryson tract as described in said first mentioned deed, except as hereinafter provided, that is to say, I release, relinquish and convey by this deed to said Company my entire remaining interest in that portion of said James M. Bryson tract of 5000 acres (the minerals of which were conveyed as aforesaid), bounded and described as follows, to-wit: (description being here given).'' The exceptions and reservations in this deed are immaterial to the issues in this cause.

On September 24, 1860, there was registered in the register's office an instrument which is as follows:

''Whereas, Robert S. Raulston, has this day conveyed to the Battle Creek & Tennessee River Mining, Manufacturing & Transporting Company all his remaining interest in the grant to James M. Bryson No. 8390, dated July the 31st, 1841, except that portion on the side of the mountain east of Battle Creek below the coal measure and below a line one hundred feet surface measure below the top of the undisturbed limestone foundation, his said interest being the soil and timber upon the portion of said tract of land not so excepted which was reserved by said Raulston in a deed executed to Wm. L. Mitchell, James Edmondson and Archibald Fitzgerald, dated January 30, 1860, conveying the mineral properties, and by said Mitchell, Edmondson & Fitzgerald conveyed (amongst

other lands) to said Company by deed dated February 18, 1860, for the additional consideration of $2000, due and payable on or before the 1st day of September, 1860.

"Now in default of the payment of said $2000 on or before the 1st day of September, 1860, such default shall operate as a rescission of the contract of sale at the option of either party, and if either party so elect to regard the contract as rescinded upon notice to that effect from either party. The said Company hereby authorize and regularly constitute and appoint A. A. Hyde their true and lawful attorney-in-fact for said Company and in their name and style to reconvey to the said Raulston the interest in the tract of land conveyed to them by said Raulston by virtue of said first mentioned deed, warranting the title to said Raulston as against said Company and those claiming through or under said Company, and they do hereby ratify and confirm any. act or thing their said attorney may lawfully do in the premises as fully and completely as if the same were done by the proper officer and under the seal of said Company and this power of attorney they hereby declare to be irrevocable otherwise than by a performance of the obligation expressed in this instrument.

"A. Fitzgerald (Seal)
"Agent of the above named Company.
"A. Fitzgerald.

"Attest:
"F. B. Morris
"W. P. Chasten,
"State of Tennessee, )
"Bradley County.      )

"Personally appeared before me, Jas. H. Rucker, clerk of the county court of said county, A. Fitzgerald (agent for the Mining Company within named), the maker of the foregoing power of attorney, a man with whom I am personally acquainted, and who acknowledged that he executed the same as such agent or power of attorney for the purposes therein contained.

"Witness my hand at office in Cleveland, under seal of said County Court, this 20th day of September, 1860.

"Jas. H. Rucker, Clk."

On September 3, 1860, A. A. Hyde as attorney-in-fact for Mitchell, Edmondson & Fitzgerald, executed the following instrument, which was registered on September 24, 1860:

"We, William L. Mitchell, James Edmondson and A. Fitzgerald, upon due notice to our attorney-in-fact in the premises do hereby release, relinquish and reconvey to Robert S. Raulston all the mineral qualities and privileges conveyed to us in

the deed of said Raulston to us, dated January 30, 1860, registered in the register's office of Marion county, Book II, pages 437 and 8, and also all the additional interests in 4000 acres of said land conveyed to us by the deed of said Raulston to us, dated the 1st day of March, 1860, and registered in the register's office in Marion county, in Book H, pages 444 and 5 the land referred to in said deed being the 5000-acre tract granted by the State of Tennessee to James M. Bryson by grant No. 8390, dated July the 31st, 1841, lying in Marion county, Tennessee, on the side and top of Cumberland eastward of the Battle Creek Valley and of the valley lands of Henry Hise, James Bryson and others.

"To have and to hold said lands to the said Robert S. Raulston, his heirs and assigns forever. We do further covenant and bind ourselves, our heirs and representatives to warrant and forever defend the title to said lands against any claim or claims to be made by ourselves or by any other person, claiming through or under us, but no further or otherwise.

"Witness our hands and seals this the 3rd September, 1860.

> "William L. Mitchell    (Seal)
> "James Edmondson    (Seal)
> "Archibald Fitzgerald    (Seal)
> "By A. A. Hyde, Atty.-in-fact."

It will be observed that this instrument was registered on the same day with the aforesaid power of attorney executed by Archibald Fitzgerald as agent for the Battle Creek Mining, Manufacturing & Transportation Company to A. A. Hyde.

The complainant, Henry B. King, executor of the will of Mrs. M. L. King, insists that the Battle Creek Mining, Manufacturing & Transportation Company obtained an absolute title to said land, including the mineral interests. In a cause styled Henry B. King, Executor, et al. v. Battle Creek & Tennessee River Mining, Manufacturing & Transportation Company, under a decree rendered in 1918 in the chancery court of Marion county, the entire Bryson tract of 5000 acres was sold to Henry B. King, executor of the will of Mrs. M. L. King; and pursuant to said decree the Clerk and Master executed a deed purporting to convey this and other tracts to said Henry B. King, executor, which deed is dated May 6, 1919, and duly registered.

The complainant therefore relies upon the title coming through the Battle Creek & Tennessee River Mining, Manufacturing & Transportation Company.

The defendants rely upon a chain of title based upon the aforesaid reconveyance by A. A. Hyde, attorney-in-fact, to Robert S. Raulston, of all the mineral qualities and privileges conveyed to

Mitchell, Edmondson & Fitzgerald in the deed of Raulston, dated January 30, 1860, and of all the other interests conveyed by Raulston to the Battle Creek Company on March 1, 1860.

The Chancellor held that as the power of attorney to Hyde was executed contemporaneously with the deed from Raulston to Mitchell, Edmondson & Fitzgerald, on the same day, January 30, 1860, it was a part of the same transaction or contract; that as these instruments are to be construed together there can be no doubt as to the intention of the parties; that this power of attorney was registered before the deed from Mitchell, Edmondson & Fitzgerald to the Battle Creek Company was registered, and it took title with legal notice of said instrument and the obligations of the grantees in the deed from Raulston therein set forth. He further held that as the deed of Hyde, attorney-in-fact, to Raulston, of September 3, 1860, recites that it was made upon notice from Mitchell, Edmondson & Fitzgerald to their attorney-in-fact, it should be presumed that this deed was made upon proper notice; and therefore that said deed was effective to pass title back to Raulston. He further held that the power of attorney executed by Fitzgerald as agent of said Battle Creek Company would bind the Company, especially as at this late day all presumptions are in its favor, and under the rule of our registration laws, it is now at least a valid instrument; but he also held that at the time of the execution of the deed by Hyde, attorney-in-fact, there was no legal authority from the Battle Creek Company authorizing a reconveyance to Raulston of the soil and timber conveyed to said Company by him by deed of March 1, 1860; and that as the power of attorney executed by Fitzgerald as agent for the Battle Creek Company to Hyde was not of record at the time Hyde executed the deed of September 3, 1860, and as Hyde did not purport in said deed to execute it for the Battle Creek Company, said deed did not operate to reconvey to Raulston the soil and timber. He held that the fact that the power of attorney executed by Fitzgerald as agent of the Battle Creek Company recited, "Whereas, Robert S. Raulston has this day conveyed, etc.," is not conclusive as to the date of the execution of the instrument, and more especially is this true of an instrument which requires registration to make it effective, as in cases of the power of attorney, under Shannon's Code, section 3697 (2); and that registration for twenty years or more would not make this deed effective by curing such defect, it appearing that at the time of the execution of the deed there was no power of attorney of record authorizing the attorney-in-fact to convey. He held that the fact that Raulston on March 1, 1860 conveyed to the same corporation, the Battle Creek Company, to which Mitchell, Edmondson and Fitzgerald conveyed, reciting that it vested in it

a title in fee-simple absolute would not be a ratification or work an estoppel under the facts shown, for the following reasons:

That the corporation purchased with the power of attorney contemporaneous with the deed of Raulston to Mitchell, Edmondson & Fitzgerald of January 30, 1860, on record at the time, and took title subject to the provisions of said power of attorney; that it had constructive, if not actual, notice or knowledge thereof and could not complain; that such sale by Raulston on March 1, 1860, did not work a ratification of the power of attorney but this power was for a specified purpose made and agreed to by both grantor and grantee at the time of sale, to secure the purchase money, and would require a special revocation, or a payment of the purchase money; that it created a trust in the property, if properly executed.

He therefore held that at the time of the execution of the deed by Hyde, attorney-in-fact, on September 3, 1860, Hyde had authority to reconvey and did reconvey the mineral interest but not the soil and timber interest transferred by Raulston to the Battle Creek Company, by deed of March 1, 1860, the power of attorney authorizing this reconveyance not having at that time been executed and recorded.

The complainant insists that the court erred in holding that the deed of Mitchell, Edmondson & Fitzgerald by A. A. Hyde, attorney-in-fact, dated September 3, 1860, conveyed any title to Robert S. Raulston to the mineral interests; first, because Mitchell, Edmondson and Fitzgerald had already conveyed their title to the Battle Creek Company; second, because said deed recites that it was made on demand of Mitchell, Edmondson & Fitzgerald, who having parted with their title could not make such demand; third, because said deed fails to show any default in the payment of the purchase money, and fails to show any demand by Raulston; fourth, because the property affected by said power of attorney having been sold to the Battle Creek Company, with the full approval and acquiescence and cooperation of Raulston, the power of attorney ceased and became functus officio and any deed thereunder is void; fifth, because if the power in Hyde was coupled with an interest, then the power of attorney became a deed of trust and no conveyance could be made by Hyde, except after notice to the owners of the property, legal steps to procure the best price, and a proper recital of such facts in the deed executed by him; sixth, because Raulston was estopped by the recitals in his deed to the Battle Creek Company from setting up any claim antagonistic to such recitals; seventh, because in any event the deed of Mitchell, Edmondson & Fitzgerald, even though their names were signed by Hyde as attorney-in-fact, could not affect the Battle Creek corporation.

The defendants insist that the Chancellor erred in holding that the power of attorney of Fitzgerald as agent for the Battle Creek Company authorizing Hyde to reconvey the soil and timber, was void and insufficient for that purpose, and that Hyde did not have such authority to convey said interest which had been transferred by Raulston to the Battle Creek Company by deed of March 1, 1860, for the reason that the power of attorney authorizing this reconveyance had not at that time been executed and recorded.

The defendants insist that this power of attorney executed by Fitzgerald as agent for the Battle Creek Company, shows exactly on its face when it was executed, and the record shows exactly when it was recorded; and the Chancellor was in error in his finding of fact, as well as his conclusion of law.

Of course, if the Chancellor was correct, the title to the mineral interests is vested in the defendants, and the title to the remaining interests in the land is vested in the complainant.

The power of attorney of Mitchell, Edmondson and Fitzgerald to Hyde, contemporaneous with the deed of Raulston, was in the nature of a defeasance. A defeasance is a collateral deed or other instrument made at the same time as another deed, containing certain conditions upon the performance of which the estate then created may be defeated or totally undone. 9 Amer. & Eng. Ency. of Law (2 Ed.) p. 169; Devlin on Real Estate, sec. 21. It must be made between the same persons who are parties to the original deed, and must be executed by the person whose estate will be defeated on the happening of the event specified. Miller v. Quick, 158 Mo., 495, 59 S. W., 955. It differs from a condition in that the condition must be in the original deed. The deed and the defeasance may be read and interpreted together as parts of the same transaction. This is upon the same principle that a lien for unpaid purchase money may be reserved by separate instrument or writing, which will be given effect, as in the nature of an equitable mortgage. 27 R. C. L., 605; Eskridge v. McCure, 2 Yerg., 84; Osborne v. Royer, 2 Lea, 217. It is the same in principle as if the power to sell upon default in payment of purchase money were reserved in the deed itself. It is clear that the purpose of Raulston, in each of his deeds, was to vest in the grantee an absolute estate in the interest in the land conveyed whenever the purchase money should be paid. As between the vendor and purchaser, the recital of payment in the deed will not operate as a waiver of the vendor's lien, or estop the vendor to assert it, if the purchase money has not in fact been paid. It is only when such a recital is acted upon by third persons in good faith, without knowledge of the facts and to their prejudice, that the person making such recital of payment is estopped to deny it. Baxter v. Wash-

ington, 8 Lea, 1; Hill v. McLean, 10 Lea, 107; Zwingle v. Wilkinson, 94 Tenn., 246, 28 S. W., 1096. As to the power of attorney executed by Fitzgerald as agent of the Battle Creek Company, we are forced to the conclusion that it was executed on March 1, 1860, the day on which Raulston conveyed the soil and timber interests to the Battle Creek Company; for this power of attorney expressly recites, "Robert S. Raulston has this day conveyed to the Battle Creek & Tennessee River Mining, Manufacturing & Transportation Company all his remaining interest in the grant to James M. Bryson, Number 8390, dated July 31, 1841, etc." This is a clear reference to the deed of Raulston which is dated March 1, 1860. This power of attorney was therefore, also a defeasance, evidently made for the same purpose as was the other power of attorney. The failure to register it until September 24, 1860 will be hereinafter dealt with.

When the Battle Creek Company, on February 18, 1860, took the deed from Mitchell, Edmondson and Fitzgerald to the mineral interests, it had constructive notice of the power of attorney of January 30, 1860, to Hyde. That power of attorney was of record. The Company was charged with knowledge that the purchase money due Raulston was unpaid, and that the power might be exercised or the conveyance might be rescinded. This is likewise true as to the title of the Company to the soil and timber, if it had actual knowledge of the second power of attorney and its provisions; or if it was the act of the Company itself.

The defendants are not estopped, claiming as privity in estate to Raulston by his recital in his deed of March 1, 1860, that under his two deeds and the deed of Mitchell, Edmondson and Fitzgerald to the Battle Creek Company, of February 18, 1860, there was vested in the Battle Creek Company an absolute estate in fee simple in the land. No mention was made of the powers of attorney in said deed. There was no special revocation of them at any time. The said deed does not stand in any different attitude from the deed of Raulston of January 30, 1860, which purported to vest an absolute estate in the conveyees. To hold that Raulston and those claiming under him are estopped by the deed of March 1, 1860, would be to violate the necessary rule that each deed and its accompanying power of attorney must be considered and interpreted together.

The power of attorney to Hyde, executed by Fitzgerald as agent for the Battle Creek Company on March 1, 1860, must now be treated as an instrument executed by the Battle Creek Company itself. Although a power of attorney must be registered to constitute notice to third parties, it is good between the parties thereto with-

out registration. Section 3765 of Shannon's Annotated Code is as follows:

"When a power or powers of attorney authorizing the sale or conveyance of real estate have been registered, whether with or without proper probate or acknowledgment, or any probate or acknowledgment for twenty years or more in the register's office of the county where the real estate is situated, or, if the land lay within the Indian territory, then if registered in the register's office of any county in the state, such power or powers of attorney shall be deemed good and valid in law to pass the estate conveyed by the attorney or attorneys-in-fact; provided, that nothing herein contained shall affect the rights of creditors or purchasers for valuable consideration without notice."

Under this section, there being no proof of want of authority in Fitzgerald to execute the power of attorney, the presumption must be applied that he was authorized to execute it and that it was properly registered. Now, although the name of the corporation is not itself signed to this power of attorney, the instrument bears inherent evidence that it was the act of the Company. It recites, "The said Company (previously named) hereby authorizes and regularly constitutes and appoints A. A. Hyde their true and lawful attorney-in-fact for said Company and in their name and style to reconvey to the said Raulston the interest in the tract of land conveyed to them by said Raulston, etc." The instrument was acknowledged by Fitzgerald as agent for said Company. Section 3762 of Shannon's Annotated Code provides:

"Where a deed has been registered more than thirty years but the register has failed to register the name of the grantor or bargainor, it shall be presumed that the name of the grantor or bargainor was subscribed to the deed, and the registration shall be good; . . ."

The original of this power of attorney is not in the record but only a copy thereof from the register's book. Unmistakably this power of attorney purports to be that of the Battle Creek Company and to constitute Hyde its attorney-in-fact. Having been registered for more than thirty years, it must be presumed that it was authorized by said Company and properly executed. Sheafer v. Mitchell, 109 Tenn., 181, 71 S. W., 86; Kobbe v. Harriman Land Co., 117 Tenn., 315, 98 S. W., 175.

It now remains to determine as to the validity of the deed of Hyde, attorney-in-fact, reconveying this entire property to Raulston on September 3, 1860. This deed was executed immediately after the day on which the purchase money for each interest was to be paid and in default of which payment a rescission would be

had by the reconveyance. It must be presumed from the execution of this deed and the long lapse of time that the purchase money had not been paid.

Section 3764 of Shannon's Annotated Code is as follows:

"In all cases where a deed or deeds conveying real estate have been executed by any person or persons purporting to act as attorney or attorneys-in-fact, which deed or deeds have been registered, whether with or without proper probate or acknowledgment (or any probate or acknowledgment), at all, twenty years or more in the register's office of the county where the real estate is situated, or, if the land lay within the Indian Territory at the time of said conveyance, then if registered in the register's office of any county in the State, it shall be presumed, until the contrary is shown, that said conveyance was properly made by the attorney or attorneys-in-fact, and such deed or deeds, or copies from the register's books, shall be deemed valid to pass the legal title to real estate in the same manner as if the same had been executed by the principal or principals; provided, that nothing herein contained shall affect the rights of creditors or purchasers for valuable consideration without notice. (1859-60, ch. 91, sec. 1.)"

Under this section the burden would be upon the complainant to show that the purchase money had not been paid, and the complainant has not carried this burden.

Under this section also the presumption must be applied that Hyde, the attorney-in-fact, was performing his duty under his appointment. The power conferred upon Hyde in the powers of attorney was a power coupled with a trust. It was not a mere naked power. It was of the same nature as a power of sale in a mortgage where a mortgage is considered as a mere security. 21 R. C. L., 775. The presumption also must be applied that the proper demand had been made upon Hyde in accordance with the requirements of the powers of attorney; that even treating his power as limited in those instruments to making the conveyance only upon demand, the demand must have been made and he acted pursuant thereto. The demand to be made was presumably to be made by Raulston, who was the party interested in having the land reconveyed to him for default in payment of the purchase money; so that there is no merit in the insistence that because Mitchell, Edmondson and Fitzgerald were recited as having made the demand and as they had parted with their title they could not make it, the condition of the demand was not complied with. Even if the deed so recites, it could not affect the fact presumed that the purchase money had not been paid. We do not hold that the power in Hyde

was coupled with an interest, but it was coupled with a trust. The contract was that if the purchase money should not be paid the land should be reconveyed. This is a sufficient answer to the proposition that the power of attorney became a deed of trust, and no conveyance could be made by Hyde except after notice to the owners of the property, legal steps to procure the best price, and a proper recital of such facts in the deed executed by him. Courts do not and cannot make or alter contracts, but it is their duty to give effect to them when they are valid.

Now it is insisted that the deed of Hyde, attorney-in-fact, was not effective to reconvey title, because it purports to have been made by Mitchell, Edmondson and Fitzgerald by Hyde, their attorney-in-fact, and not by the Battle Creek Company. For the reasons given, we hold that the powers of attorney to Hyde were still in force on September 3, 1860. In this deed he purported to reconvey not only the mineral interests but also all of the additional interest in four thousand acres of land, conveyed to Mitchell, Edmondson & Fitzgerald by the deed of Raulston to them, dated March 1, 1860 and registered, the land being further described by reference to the grant, etc. It is well settled that the intention to execute a power need not be expressed in a deed; that an instrument given in execution of a power need not contain any reference to the power, if the intention of the donee to exercise the power can be ascertained from the subject-matter of the instrument. The leading case upon this subject is Guaranty Co. v. Jones, 103 Tenn., 245, 58 S. W., 219. In the opinion in that case, Mr. Justice Wilkes reaffirmed this doctrine which had been applied in Young v. Mutual Insurance Company, 101 Tenn., 311; and approved again the rules laid down by Mr. Justice Story in Blagge v. Miles, 1 Story Rep., 426 (approved also in Lee v. Simpson, 134 U. S., 572, 33 L. Ed., 1038), as to the indication of a sufficient intention to execute the power: "first, when there is some reference in the will or other instrument to the power; or, second, a reference to the property which is the subject of the power; or, third, when the instrument executed would be ineffectual or a nullity and could have no operation as an execution of the power." The learned Justice, speaking for the court, further said:

"If there is a reference to the property which is subject to the exercise of the power, and the grantors have no right to convey except under the power, it is sufficient." 2 Washburn on Real Property, 618 (3 Ed.) ; 2 Perry on Trusts, sec. 511c, (4 Ed.). "It is sufficient if the intention to execute the power appears by act, words or deeds, demonstrating the intention. Pate v. Pierce, 4 Cold., 113."

The same doctrine was applied in Matthews v. Capshaw, 149 Tenn., 48, 72 S. W., 964, 97 A. S. R., 854.

In the deed of Hyde, attorney-in-fact, there is specific reference to each interest in the property, and to the deeds of Raulston, each specifying the book and page in which each was registered. This constituted not only a reference to the source of the power, but also a description of the property. Land Co. v. Hilton, 121 Tenn., 308, 120 S. W., 162.

We are therefore of the opinion that the said deed of Hyde as attorney-in-fact, was valid and effective as a reconveyance of all the interests in the land to Raulston. It follows that that portion of the decree of the Chancellor awarding all the interest in this land, except the mineral interest, to the complainant must be reversed, and that part awarding the mineral interest to the defendants is affirmed; and the decree in this cause will award to the defendants this tract of land, tract number eight, and all the interests therein, in fee simple.

Tract number one.

The parties respectively claim this tract under Battle Creek Mining, Manufacturing & Transportation Company as a common source of title. It was conveyed to said Company by Mitchell, Edmondson and Fitzgerald by the aforesaid deed of February 18, 1860. It was conveyed to them on September 14, 1859, by George W. Rice, to whom it was granted by grant No. 8522 on November 9, 1841.

The complainant Henry B. King, executor of Mrs. M. L. King, claims under a deed of A. L. Robinson, Clerk and Master, to Henry B. King, executor, which admittedly purported to transfer all of the right and title of the Battle Creek Company. It may be here said that this deed purports to pass title to all of the tracts involved in this cause.

The defendants trace their title through a deed of the Battle Creek Company to John P. King, and a deed from Henry B. King to Donaldson and Hudson.

The deed of the Battle Creek Company to John P. King was held by the Chancellor to be void for insufficiency of description of the land conveyed. Although it purported to be made by the Battle Creek Company, it was not signed in the name of said Company, but was signed, "William L. Mitchell, President." It was not acknowledged, but was attested, "Stamped, signed, sealed and delivered in the presence of J. W. Johnson; M. L. Durham, Justice of the Peace."

It is not seriously contended that these defects have not been cured, under the statute, by the fact that the deed had been registered for more than fifty years. It is insisted that the deed is

not void for indefiniteness, but contains sufficient reference to other tracts—the location of which is shown by parol testimony.

It is also insisted that H. B. King is estopped to claim this land, because in 1889, claiming under the deed of the Battle Creek Company to John P. King, he entered into a contract to convey this tract of land and conveyed it by title bond to Donaldson and Hudson, parties under whom defendants claim to own. But H. B. King is not a party to this cause and his own act would not work an estoppel upon the third party, the estate of Mrs. M. L. King, of whose will he is executor. He is a party to this cause only as executor. It is not Henry B. King, individually who is claiming the land, but it is H. B. King, as executor.

We are of the opinion that the Chancellor was correct in his findings of fact and conclusions of law as to the title to this tract as follows:

"Defendants claim this tract under deed from Battle Creek Mining, Manufacturing & Transportation Company to John P. King, executor, by William L. Mitchell, President, December 23, 1868, and deed from John P. King to H. B. King, dated August 19, 1871, and by mesne conveyance to defendants.

"Since the first deed referred to above has been of record sufficient length of time to cure defect of acknowledgment, it seems to me that defendants' claim will depend upon description of the land conveyed therein; waiving for the present the question whether a deed executed by a corporation and signed only by one purporting to be its president, without acknowledgment or other identification, is good to pass title, although said deed has been of record since 1880.

"The deed of December 23, 1868, by Mitchell, President, to John P. King, recites, an indenture between the Battle Creek & Tennessee River Mining & Transportation Company, of the county of Marion and State of Tennessee, of the one part, and John P. King, of the county of Richard and State of Georgia, of the other part. The deed then recites 'in consideration of the liberality of Col. Edmonds, and consent on the minutes of said Company, July, 1861, to convey to him, the said Edmonds and J. P. King, the then joint owner of the Elizabeth Lewing farm, the 200-acre tract granted to George W. Rice, and containing 111 acres, three rods and seven poles, and adjoining said farm containing the spring on the mountain side of the mountains, for the purpose of water, reserving to said Company the right of all coal minerals,' etc., and reciting further, 'in consideration of the fact that by a subsequent arrangement between said Edmondson and J. P. King, the latter became the owner of the said Elizabeth Lowery ———— or

—————, and the farm desired the said tract of 111 acres three rods and seven poles to go with the said farm and be conveyed to said J. P. King above, etc. . . . the said party of the first part has given and granted and conveyed, and do by these presents give, grant and convey unto John P. King, his heirs and assigns, above described tract of 111 acres three rods and seven poles, the same being situated and lying above the place where said George W. Rice had his own improvements. To have and to hold said tract of land, etc.' It will be seen that neither the State or county in which the land sought to be conveyed, is mentioned. It is recited in the deed that Edmondson and King were the joint owners of the Elizabeth Lewing farm (which I think the court might be warranted in construing as meaning the Elizabeth Lowrey farm, under the proof) the 200-acre tract granted to George W. Rice . . . and adjoining said farm, etc. Then it is recited that King became the owner of the Elizabeth Lowery ————— or ———— and the farm desired the said tract to be conveyed to King, etc. The conveying clause of the deed conveys to King the above-described tract of 111 acres, etc., 'the same being situated and lying above the place where said George W. Rice had his own improvements.'

"There is no location of the Elizabeth Lowery or Lewing tract referred to, there is no recitation of any other deed, document or instrument referred to that might guide or assist in the location of either the Lowery or Rice tract. It is not stated by whom the land was granted to Rice, neither the number of the entry or grant is given in the deed by which either the Lowery or the Rice tract can be located. The deed recites that Battle Creek, etc., Company 'of Marion county and State of Tennessee, of the one part.' But because the deed recites the situs or domicil of the corporation to be in a certain county in the State, by no means would justify the assumption that the land was situated in that county, and especially where the conveyee is a resident of another State. The rule is, I think, that we must look to the recitation of the deed for description, and to other instruments referred to therein which may be considered in the location; and that parol testimony may be employed to assist in the location but not to supply description. In Daugherty v. Chestnut, 86 Tenn., 1, the court inferred that the land was situated in Hawkins county because the lease showed that the parties to the instrument resided in that county.

"In Case v. Brier Hill Collieries, 145 Tenn., at page 17, the court said 'We can infer nothing as to the county in which

this land is located, from the statement of the papers before us as to the residence of the parties thereto. The Crawfords live out of the State and while it appears that S. H. Pile was a resident of Fentress county, yet the settlement undertook to deal with lands in Fentress, Scott and Pickett counties.'

"In the case at bar we have diversity of citizenship in the deed of conveyance with no State or county given in which the land sought to be conveyed is situated; neither is there State or county given as to location of the tract therein mentioned which the tract sought to be conveyed is said to adjoin. The court cannot infer from the instrument the location of the land, neither can it extend inquiry by parol testimony beyond the terms of the deed; to do so would in my judgment be to supply the description. It is not shown in the deed in question where the land sought to be conveyed for the land it is said to adjoin, is situated; neither does the proof in the cause meet the objection in Wood v. Zeigler, 99 Tenn., 515, where it is held that a description of property as the 'Baldwin Place' in an instrument, which did not give the State and county where located, or name of owner, was fatally defective.

"These authorities, I think, are applicable here.

"It is true that the complainant describes a tract of land in his bill, the first tract therein, as situated in Marion county, Tennessee, '200 acres granted to G. W. Rice on November —, 1841, and described as beginning on a stake in the line of Henry M. Rutledge' 2500-acre tract, etc., and by the testimony of witness D. C. Kelly proves the location of said tract, and that it is covered by Marion county Entry No. 1213 made by G. W. Rice, and by grant No. 8522 issued to him November 9, 1841, and that the Rutledge tract and the Lowery reservation are well-known tracts (Q. & A. 39-49) but I do not find any proof that the Lowery reservation (the Rutledge tract is not mentioned in the deed to J. P. King) has anything more than local notoriety which would take it out of the rule in Wood v. Zeigler, and the same is true of the G. W. Rice tract.'

"There is an interruption by Mr. Lanier following Q. 46 D. C. Kelly deposition, that the grant to the Elizabeth Lowery reservation is a grant from the United States of America, and, also by Mr. Spears, that it was an Indian reservation. If indeed this can be looked to as proof, it does not show that it was known as such beyond the immediate locality; neither did I find in the proof identification of the land sought to be conveyed by Mitchell, President, to John P. King; nor is it shown by the proof (should it be competent to do so) that it was the identical land described and intended to be conveyed by said

deed. The only proof upon this is a statement by witness B. C. Grayson at Q. 31, that this deed covers the Rice 200-acre tract, which I think an insufficient identification.

"The court is of opinion that the deed is void for indefinite description, and that the deed from John P. King to Henry B. King, and from Henry B. King to defendant conveys no title, in the absence of possession thereunder; the deed to J. P. King being void.

"Complainant will therefore have decree for this first tract. I do not think a deed from Henry B. King, individually would estop him from claiming as executor, and especially so if he is not the devisee or beneficiary." The defendants' assignment that the Chancellor erred in awarding this tract to the complainant is overruled.

Tracts numbers two and three.

The titles to these tracts are not in controversy in this court.

Tracts number four, five, six and seven.

The defendants insist that they have the better title to each one of these tracts. The complainant was awarded title to that portion of tract number five covered by grant No. 12,316 to A. A. Hyde.

Of course the complainant must recover any land in ejectment upon the strength of his own title, not upon the weakness of that of his adversary.

As to tract four, complainant deraigns title from Grant 8506 to William Murray and George W. Rice, dated November 8, 1841, based upon Entry 1857, dated February 14, 1839, which shows a regular chain of title based upon said entry and grant.

Defendants deraign title through one Patterson B. West to all of these tracts (excepting a part of tract No. 5) to Grant 9731, February 16, 1849, based on Entry 1705, April 11, 1836; Grant 10,261, August 25, 1849, based on Entry 1626, April 28, 1837; Grant 10,260, August 25, 1849, based on Entry 1704, March 10, 1838. It is also claimed that tract seven is embraced in a deed from F. S. Hyde, executor of W. E. Donaldson, trustee, conveying a one-third undivided interest in that part of the William Parks Grant 7799 that lies west of the Nimrod Moore grant, and containing 126 acres. This deed was executed August 30, 1889. The William Parks grant, was issued in 1840, based on Entry 1317, November, 1835.

The Chancellor awarded tract four to the complainant as aforesaid, and as described in his decree, containing 500 acres.

It seems to be that part of the tract not covered by the Bryson grant No. 8390.

In our opinion there was no error in this award, because there is a hiatus in each case between the entry and the grant relied on by the defendants; and the land was granted to complainant's pred-

ecessors in title prior to the hiatus. Comparing the dates of the grants, we find that the grants relied on by complainant are older in point of time, and therefore superior to those relied on by the defendants. It is not deemed necessary to discuss at length the rules of law governing that situation. By chapter 12 of the Acts of 1839 it was provided, that the enterer should have until September 1, 1841 to have his land surveyed, "and the further time of two:· years from the passage of the land act to have such surveys granted; and if such surveys shall not be made and grants obtained thereon, as provided in this act, such entry or entries or surveys as he gives himself, shall be null and void as against subsequent enterers." On November 30, 1841, by chapter 15 of the Acts of 1841, a further time of two years from the date of the passage of that act was given in which to perfect entries by surveys and grants. See Williamson v. Throop, 11 Humph. 265, the leading case on this subject. This is no longer an open question and it is plain that there was a hiatus. Therefore the defendants' titles date from the grant themselves which they rely on, and not from any other period. These grants were issued in 1849. The complainant's title, based on an earlier grant, is necessarily the superior title. See also Hilton v. Anderson, 149 Tenn., 622, 261 S. W., 984. It is not claimed that any of the entries upon which defendants' grants were based, are special.

As to tract number five.

The Chancellor awarded to complainant title to that portion of tract No. 5 covered by Grant 12,316 to A. A. Hyde as aforesaid. It seems not to be seriously contended by counsel for defendants that the Chancellor was in error in this portion of his decree. No argument is made in the brief for defendants in support of the assignment as to tract number five.

As to tract number six.

Complainant and defendants claim this tract through the same source of title, Grant 9371, February 16, 1849, to Patterson B. West. Both seem to have regular chains of title, so the issue depends upon superiority of title, or more specifically, priority of title. Complainant claims through a deed from A. A. Hyde, who purchased at sheriff's sale, made to him in February, 1861. The sheriff's deed was in July, 1868, and recorded in 1872. This deed is based upon a judgment and order of sale made by the circuit court of Marion county in a cause styled Frazier· & Hyde v. Patterson B. West. The deed recites, levy on the land and condemnation, but does not recite that execution issued on the judgment. Defendants claim that complainant relies also on two tax deeds from the revenue collector prior to this sheriff's deed; but complainant denies that he relies upon either of these tax deeds. The Chancellor held that

at the time of the judgment the title to the property was in Patterson B. West, the judgment debtor, and we find this to be correct. In fact, it is not disputed and cannot be, because both parties rely upon it. We will therefore ignore these tax deeds. The defendants make no argument by way of attack upon the validity of the sheriff's deed to Hyde. They claim that they acquired the Patterson B. West title under certain decrees of the United States circuit court in 1885 and thereafter. But we are of the opinion that the sheriff's deed of 1868 to A. A. Hyde recites sufficient facts to support a valid deed. Its recitals show order of sale, judgment in favor of Frazier & Hyde v. Patterson B. West, previous levy and condemnation, amount of judgment and sale of Patterson B. West Grant, Entry 1705, described by metes and bounds. The deed shows proper demand and notice and public sale to the highest bidder at the courthouse door in Marion county on February 4, 1861, agreeable to advertisement and notice and the sale to A. A. Hyde the highest and best bidder, for $53.87. There is no evidence offered to impeach the recitals of this deed, and therefore, under Shannon's Annotated Code, section 5572a2, the presumption that the sheriff had the power to execute the deed is conclusive. The title of complainant to this tract is a valid title and therefore superior to the claim of title of the defendants.

As to tract number seven.

The Chancellor said:

"Complainant's title is based on Entry 1317 to William Parks, November, 1835, granted to said Parks by grant ———— —— 1840, and it seems to be the oldest title on the ground, and complainant files a complete chain of title."

Complainant deraigns title from Grant 7799 to William Parks, July 10, 1840, based on Entry 1317, November 10, 1835. Parks conveyed to George W. Rice and he conveyed to Mitchell, Edmondson and Fitzgerald. Then the title passed through mesne conveyances to complainant. This chain of title is complete. The defendants do not undertake in their brief to show fully their claim of title to this tract, except that they say:

"Also embraced in deed from F. S. Hyde, executor to W. A. Donaldson, trustee, conveying one-third undivided interest in that part of the William Parks' Grant Number 7999, that lies west of the Nimrod Moore grant, and containing 186 acres."

The record contains a deed of F. S. Hyde, executor to W. E. Donaldson, trustee, containing the following description: "Also an undivided one-third interest in a tract in fee lying in the 7th Civil District of Marion county, Tennessee, it being that part of the Parks' 5000-acre tract lying west of the Moore 5000-acre tract on Cumberland Mountain"—followed by a description by metes

and bounds. The deed was dated August 30, 1889. The source of title of A. A. Hyde of whose will F. S. Hyde was executor, is not shown in this record. Upon this point the Chancellor said:

"Defendants' counsel in his brief refers to conveyance from Mitchell, Edmondson & Fitzgerald to O. P. Thatch and A. A. Hyde, and from O. P. Thatch and A. A. Hyde to W. E. Donaldson, et al. as completing the chain of title into defendant Richardson. I do not find either of these deeds in the file, neither can I find any reference to them or either of them in the proof, nor where they have been offered as exhibits to any of the depositions taken in the cause. In their absence, and assuming counsel was in error in the reference, the court is of the opinion that the complainant has the title to this tract and so awards decree."

Of course, under these circumstances, the Chancellor could not have held otherwise. The complainant's title based upon a conveyance from Mitchell, Edmondson and Fitzgerald is superior in point of priority to any title based upon this deed of F. S. Hyde, executor to Donaldson, trustee. It is not denied that it is prior in point of time to these particular deeds. As aforesaid, we find no other source of title as a basis for the title of A. A. Hyde.

We have now disposed of all the issues presented as to all of these tracts of land. It results therefore, that except as to tract number eight, the decree of the Chancellor is in all things affirmed. As to tract eight, the decree of the Chancellor is modified as hereinbefore set forth, by awarding the whole tract and all the interest therein to the defendants. The cost of the appeal will be adjudged three-fourths against the defendants and the surety on their appeal bond, one-fourth against the complainant and the surety on his appeal bond. The cause will be remanded to the chancery court of Marion county for any further proceedings, not inconsistent with this opinion, which may be necessary.

Crownover, J., and Henderson, Special J., concur.