Eric D. CHRISTIANSEN, Administrator C.T.A. of the Estate of Mary T. Austin, Deceased (Originally Elizabeth T. Austin, Executrix of the Estate of Mary T. Austin, Deceased), Plaintiff–Appellant,

v.

ROLICH CORPORATION, et al., Defendants–Appellees.

Court of Appeals of Tennessee, Eastern Section.

June 20, 1995.

Permission to Appeal Denied by Supreme Court Oct. 30, 1995.

**824**

Craig V. Gabbert, Jr. and John F. Blackwood, Harwell, Howard, Hyne, Gabbert & Manner, P.C., Nashville, for Plaintiff–Appellant.

John A. Walker, Jr., Walker & Walker, Bernard E. Bernstein and James E. Paris, Bernstein, Stair & McAdams, Knoxville, Frank A. Johnstone, Wilson & Worley, Kingsport, and Kenneth Clark Hood, Rogers, Laughlin, Nunnally, Hood & Crum, Greeneville, for Defendants–Appellees.

### OPINION

FRANKS, Judge.

Elizabeth T. Austin ("Lisa") appeals the dismissal of her shareholder derivative action on behalf of her deceased mother's estate.

Lisa is one of three children of Mary T. and Robert C. Austin, Sr., the other children being Christy and Robert, Jr. At all times relevant to this suit the children owned stock in a closely held family corporation, Rolich, along with their mother as follows:

| | |
|---|---|
| Mary | 382 shares |
| Lisa | 234 shares |
| Robert, Jr. | 196 shares |
| Christy | 188 shares |
| TOTAL | 1000 shares |

In 1987 Rolich Corporation acquired a 70% majority control of another corporation, Unaka, in a leveraged buyout financed by Fleet National Bank ("Fleet"). As a result, the Unaka stock became Rolich's principal asset. Both parents and all three of the children guaranteed the loan made to finance the buyout. The family holdings in another closely held corporation, the Austin Company, were pledged as part of the collateral securing the loan. When the loan closed, as part of the deal, the family members agreed to sell the Austin Company stock to the Austin Company Employee Stock Ownership Plan—yet another newly formed corporation,

all of the proceeds from which were to be applied to reduction of the principal on the loan. This transaction was accomplished in the fall of 1989 and resulted in a capital gain for the children and father of $1,900,000 and a combined tax liability of some $532,300+. The children's mother, Mary, did not participate as she died the preceding August.

In order to defer the tax liability on the realized gain on the Austin Company stock, Robert, Sr. and the children, including Lisa, as directors of Rolich Corporation, decided to have Rolich sell 12,557 shares of Unaka Corporation to themselves at $220.00 per share in a "rollover" transaction pursuant to § 1042 of the Internal Revenue Code. The transaction was completed in September 1990. Robert, Sr. died prior to its completion, but the personal representative of his estate, with written authorization from the children (who were the estate's beneficiaries), executed the transaction. Although Rolich lost majority control of Unaka (its interest being reduced to approximately 40% of the outstanding stock), this did not seem to be a problem at the time as the family members retained a combined controlling interest in the corporation.

Prior to his death in August of 1990, Robert, Sr. qualified as personal representative of Mary's estate, and, as her sole beneficiary, disclaimed any interest in the Rolich Corporation shares which she held at the time of her death in August of the preceding year. The children became equal beneficiaries in the Rolich stock then in Mary's estate.

In May 1991, Lisa qualified as the successor personal representative of her mother's estate. The following September, she filed this suit pursuant to T.C.A. § 29–14–105 (declaratory action) and T.C.A. § 48–17–401 (shareholder derivative action) in her representative capacity, alleging that the Unaka stock was sold to the directors of the Rolich Corporation for less than fair market value, to Rolich's detriment. She asked that the Court rescind the transaction.

In August 1992, Lisa resigned as personal representative of her mother's estate and Eric Christiansen was appointed Administrator, *c.t.a.* shortly thereafter. Mr. Christian-

sen filed his Report and Annual Accounting for the estate in October 1993, declining to pursue this litigation and surrendering his right to pursue such to any beneficiary who might desire to do so at his or her own expense.

Pursuant to the Trial Court's order of May 1994, Lisa gave notice of her intent to pursue the suit. A hearing was held in September 1994 on Motions for Dismissal and Summary Judgment by the various defendants and judgment was entered dismissing the suit pursuant to Rules 12.02(6) and 56 of the T.R.C.P. and on the basis of estoppel. This appeal followed.

■ Upon review of the record, we conclude that the Trial Court was correct in dismissing the declaratory action filed pursuant to T.C.A. § 29–14–105 [1] under Rule 12.02(6) of the T.R.C.P. (failure to state a claim upon which relief can be granted). It is clear that the statute does not contemplate this type of action. There are no rights to be declared with respect to the ownership or devise of the Rolich Corporation shares. Moreover, the fact that 382 shares of Rolich Corporation stock comprise part of Ms. Austin's estate does not give the estate, through its personal representative, the right to question corporate acts in a declaratory action under this statute.

■ Summary judgment in favor of the defendants in the shareholder derivative suit was inappropriate. Lisa, as personal representative of her mother's estate, is a proper entity to maintain a shareholder derivative action with respect to the sale of the Unaka stock. It is true that Lisa could not maintain this suit in her own right as shareholder of Rolich stock because she participated in the transaction, see *Uffelman et al. v. Boillin et al.*, 19 Tenn.App. 1, 82 S.W.2d 545 (1935). As personal representative of her mother's

estate, however, Lisa functions in a capacity separate and apart from Lisa, the individual. Since the estate was without personal representation at the time of the transaction and did not participate in any way, we see no reason why the personal representative may not bring such an action. It is well settled that a personal representative may act as the shareholder for shares comprising part of an estate, including voting, selling, and buying shares as required to maximize the estate's assets. As the Trial Court points out, Mr. Christiansen could have pursued this litigation if he chose to do so. Estoppel is inapplicable because of the separate nature of the individual and representative capacities. *See King v. Richardson,* 7 Tenn.App. 535, 549 (1928).

■ A shareholder derivative action is one "brought by one or more shareholders on a corporation's behalf to redress an injury sustained by, or to enforce a duty owed to, a corporation." *Lewis v. Boyd,* 838 S.W.2d 215 (Tenn.App.1992). It is an action filed for the benefit of the corporation. Thus, the primary issue in the case at bar, which is a shareholder derivative action, is whether Rolich Corporation was in fact injured by the transaction. The issue as to "what's in it for the estate?", as the Chancellor put it, is secondary and can only be assessed upon a factual determination as to the value of the Unaka stock at the time of the transaction and an analysis of the overall effect of the transaction on the corporation, and thus the value of Rolich's stock, viewed within the context of the business judgment rule. *See Lewis.* In the face of the disputed issues of material fact raised, summary judgment was inappropriate.

We therefore vacate the summary judgment in part and remand this case for for

---

1. T.C.A. § 29–14–105. Fiduciary powers and duties.—Any person interested as or through an executor, administrator, trustee, guardian, or other fiduciary, creditor, devisee, legatee, heir, next of kin or cestui que trust, in the administration of a trust, or the estate of a decedent, an infant, lunatic, or insolvent may have a declaration of rights or legal relations in respect thereto:

(1) To ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others;

(2) To direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity; or

(3) To determine any questions arising in the administration of the estate or trust, including questions of construction of wills, and other writings.

further proceedings with costs assessed one-half to appellees and one-half to appellant.[2]

GODDARD, P.J.(E.S.), concurs.

SUSANO, J., dissents.

SUSANO, Judge, dissenting.

I dissent from the majority opinion. I do not believe that Elizabeth T. Austin should be permitted to use the estate as a "battering ram" against her siblings to attack a transaction in which the three children were all willing participants. By permitting her to sue in the name of her mother's estate, she is doing indirectly what the majority opinion concedes she cannot do directly. The sale by the Rolich Corporation of the stock of the Unaka Corporation was a transaction designed to insulate the children, including Elizabeth T. Austin, and their father from, and thereby defer and presently avoid, a substantial tax liability. Because of an apparent falling-out among the children, the tax benefits of that transaction—including those enjoyed by Elizabeth T. Austin—are now apparently in jeopardy.

I believe the majority is wrong in permitting this suit to move forward in the name of an estate when it is clearly an action being pursued by Elizabeth T. Austin because she perceives some advantage to herself in doing so. In fact, the estate of Mary T. Austin is nothing more than her three children—the sole beneficiaries of the estate. Each of these three children freely participated in the transaction which is the subject of this litigation. Elizabeth T. Austin is now being permitted to use the fiction of the estate in an attempt to upset what she once viewed as a favorable transaction, and thereby unleash a substantial tax liability with potential penalty and interest assessments.

I would hold, as the Chancellor did, that Elizabeth T. Austin is equitably estopped, by her prior conduct, from pursuing this suit. *See Uffelman v. Boillin,* 82 S.W.2d 545, 569,

82 S.W.2d 545 (Tenn.App.1935). I would affirm the judgment of the Chancellor.

---

2. This estate has remained open for a number of years due to protracted litigation among the beneficiaries. In this case, we commend for the parties consideration T.C.A. § 48–17–401(d) and T.C.A. § 48–17–401(c).